A95A1500. CRS SIRRINE, INC. v. DRAVO CORPORATION et al.
(464 SE2d 897)

POPE, Presiding Judge.

Defendant (CRS Sirrine, Inc.) and plaintiffs (Dravo Corporation and Weyher/Livsey Constructors, Inc.) were joint venture partners who contracted with the Navy to build a power plant for a fixed price. Defendant provided design expertise and produced a technical proposal which was used to draw up the bid for the project; plaintiffs prepared the bid based on defendant's documents and then were responsible for the actual construction of the project. Numerous problems, many of which were caused by deficiencies in defendant's design documents and other breaches of defendant's contractual and fiduciary

duties, resulted in a loss to plaintiffs of approximately $30,000,000.

In this action, plaintiffs attempt to recoup some of that loss from defendant. (Defendant was paid a fee for its work on the project and would have shared in any profits, but did not share the risk of loss.) After an extremely lengthy bench trial at which thousands of exhibits were admitted, the trial court found that defendant had breached its contractual and fiduciary duties by failing to provide plaintiffs with sufficient and accurate information, by failing to make any effort to design the project within budgeted quantities, and by failing to notify plaintiffs when significant increases over estimated quantities occurred. The court further found that these breaches proximately caused some but not all of plaintiffs' damages; it listed out the various categories and amounts of damages proved by plaintiffs, and then found that defendant caused and was liable for $5,518,812 of those damages.

Defendant appealed that decision on several grounds, including the sufficiency of the evidence to support the trial court's determination of the amount of damages caused by defendant. See *CRS Sirrine, Inc. v. Dravo Corp.*, 213 Ga. App. 710 (445 SE2d 782) (1994). We upheld the trial court's imposition of time limits at trial and its construction of the joint venture agreement, see id. at 713-719 (1 & 2), but remanded the case for clarification because we could not determine from the trial court's findings how it arrived at the $5,518,812 figure. (From the findings on damages, and the findings on defendant's breaches and their effects on the project, it actually seemed like the award should have been more — about $8,000,000.) See id. at 719-721 (4). On remand, the trial court issued an almost identical judgment, reaffirming its determination that defendant caused $5,518,812 in damages but clarifying its methodology by specifying what percentage of losses defendant was responsible for in each category of damage.

1. In this appeal from that second judgment, defendant again contends that the trial court's finding that defendant's breaches caused $5,518,812 in damages was based on improper speculation rather than sufficient evidence. The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. *Kimbrell v. Effingham Bd. of Tax Assessors*, 191 Ga. App. 544 (382 SE2d 388) (1989).

The voluminous evidence in this case showed that numerous changes in the project had to be made as the result of problems with defendant's designs,[1] and that these changes increased costs by neces-

---

[1] Some of these problems related to defendant's original technical proposal based on Navy specifications, which resulted in an underestimation of materials needed, while others related to the construction designs subsequently provided by defendant, in which materials

sitating the purchase of more and different supplies, by delaying completion of the project, and by increasing labor costs. This is more than sufficient to support the trial court's award.

Defendant nonetheless argues that reversal is warranted because the trial court, after finding that defendant did not cause *all* of plaintiffs' damages, should have limited the award to specific increases in costs which could be shown to result solely from specific breaches on the part of defendant. But defendant's position — that in cases where both parties have contributed to a loss, the party who has initially sustained the loss cannot recover *anything* if it cannot specifically identify which aspects of the overall loss were specifically and solely the result of the other party's conduct — would establish a standard which would be almost impossible to meet, resulting in nonliability for the defendant even when it is clear that the defendant caused a substantial portion of the loss. As such, defendant's suggested standard is inconsistent with our general approach to damages: While mere speculation cannot support a damage award, all that is required is evidence from which damages can be estimated with reasonable certainty, and difficulty in fixing the exact amount should not preclude recovery. See, e.g., *Shepherd v. Aaron Rents,* 208 Ga. App. 139, 143 (3) (430 SE2d 67) (1993).

Thus, if a plaintiff can show with reasonable certainty the total amount of damages and the degree to which those damages are attributable to defendant, that is sufficient to support an award. And that is exactly what happened in this case. The court determined from the evidence that a certain percentage of the increase in various categories of project costs was caused by defendant and then applied those percentages to the amount of increased costs in each category to establish the amount of damages caused by defendant. We therefore approve the trial court's method of ascertaining the damages caused by defendant. Cf. *Rome Housing Auth. v. Allied Bldg. Materials,* 182 Ga. App. 233 (5) (355 SE2d 747) (1987) (where evidence supports joint assessment of blame, the trial court is authorized to apportion damages).

Defendant cites several cases for the proposition that a defendant whose conduct has caused a delay is not liable if the plaintiff's own conduct also partially caused or contributed to the delay. See, e.g., *State Hwy. Dept. v. MacDougald Constr. Co.,* 102 Ga. App. 254, 264-265 (2) (115 SE2d 863) (1960); *Bancroft v. Conyers Realty Co.,* 63 Ga. App. 106 (2) (10 SE2d 286) (1940). Defendant reads these cases too broadly, however. Rather than barring recovery whenever a plaintiff's conduct has contributed to the delay, these cases are simply a specific

were called for beyond what was actually required by Navy specifications.

application of the general principle expressed in OCGA § 13-4-23: If a party to a contract makes it impossible for the other party to perform, the other party's nonperformance is excused. Thus, if a defendant's contribution to the delay was the result of the plaintiff's own conduct, the defendant is not liable for the delay. In this case both parties contributed to the delay, but defendant's breaches were in no way caused by plaintiffs' conduct. Thus, OCGA § 13-4-23 does not apply to excuse defendant's breaches.

Lastly, defendant suggests that the evidence does not support the award because if the court had truly accepted plaintiffs' theory and testimony regarding damages, it would have had to award more damages than it actually awarded. In the face of a factfinder's verdict, however, a defendant cannot complain that the plaintiff was entitled to more or nothing at all. *Johns v. League, Duvall & Powell, Inc.*, 202 Ga. 868, 871-874 (1) (45 SE2d 211) (1947).

2. Defendant's second enumeration of error addresses the trial court's ruling that postjudgment interest should run from the date of the original judgment rather than from the date of the revised judgment entered after remand. All money judgments in Georgia bear postjudgment interest from the date of entry. OCGA § 7-4-12. But if a case is remanded for clarification by the appellate court and a second judgment — identical to the first except for a clarification of how the damages were figured — is entered, when does the postjudgment interest start?

Applying an analogous federal statute which also provides for postjudgment interest on all money judgments, federal circuit courts of appeal have held that where more than one judgment has been entered in a case, the decision of whether postjudgment interest should run from entry of the original or second judgment "turns on the degree to which the original judgment was upheld or invalidated on appeal." *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F3d 88, 96-100 (3d Cir. 1993); 28 USCA § 1961. Accord *Dunn v. Hovic*, 13 F3d 58, 61 (3d Cir. 1993); *Tinsley v. Sea-Land Corp.*, 979 F2d 1382, 1383 (9th Cir. 1992); *Wheeler v. John Deere Co.*, 935 F2d 1090, 1097 (10th Cir. 1991); *Cordero v. De Jesus-Mendez*, 922 F2d 11, 15-18 (1st Cir. 1990). "In general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment." *Cordero*, 922 F2d at 16. We find the analysis and approach of these cases persuasive, and adopt them here.

In *Loughman*, the Third Circuit notes that application of the standard articulated in *Cordero* is often very fact specific, with cases falling somewhere on a continuum between one extreme, in which the original judgment is reinstated in its entirety and postjudgment inter-

est clearly accrues from the date of the original judgment, and the other extreme, in which the original judgment is reversed completely and postjudgment interest clearly does not begin accruing until entry of the later judgment. See 6 F3d at 98. Utilizing the *Cordero* standard, courts have held that postjudgment interest accrued from the date of the original judgment (1) where the appellate court reduced the plaintiff's damages from more than 26 million dollars to 1.5 million dollars by remittitur, but part of the original damage award was affirmed without the necessity of retrial, see *Dunn*, 13 F3d at 61; (2) where the appellate court reversed a determination that plaintiff was not comparatively negligent and remanded for evaluation of plaintiff's comparative negligence and appropriate reduction of the damage award, see *Tinsley*, 979 F2d at 1383; and (3) where the appellate court remanded for retrial on damages due to a harmful error in the court's jury charge, but the original finding of liability was not disturbed, see *Cordero*, 922 F2d at 15-19.

In this case, our prior opinion affirmed the trial court's finding of liability and simply remanded for clarification of the damage award. Despite our arguably loose use of the term "reverse," defendant's contention that we totally invalidated the prior judgment ignores reality.[2] There was no determination that the first judgment lacked an evidentiary or legal basis. There was no determination that errors affecting basic issues of the case (or even errors not affecting basic issues of the case) occurred at trial. Compare *Wheeler*, 935 F2d at 1097. Moreover, the second judgment awarded exactly the same amount of damages as the first, and did so without the necessity of a retrial. In each of the cases discussed in the previous paragraph, there was some substantive change between the original and subsequent judgments; yet postjudgment damages started with the original judgment. Thus, the case for starting postjudgment damages with the original judgment is even stronger here, where the two judgments are identical except for clarification of the trial court's calculation of damages. Accordingly, we conclude that the trial court did not err in determining that postjudgment interest would run from the date of the original judgment.[3]

---

[2] *Crolley v. Haygood Contracting*, 207 Ga. App. 434 (2) (429 SE2d 93) (1993) is distinguishable, as our pre-remand decision in that case (201 Ga. App. 700, 703 (3) (411 SE2d 907) (1991)) went directly to the question of liability, reversing as legally insupportable the trial court's ruling that both a principal and his agent could be liable.

[3] See also *Clifford v. M/V Islander*, 882 F2d 12 (1st Cir. 1989), an earlier case in which the First Circuit reached the same conclusion, without the benefit of the *Cordero* analysis, in a situation almost identical to that presented here. In *Clifford*, as in this case, the appellate court had affirmed the trial court's liability determination but ruled that the court had not sufficiently explained the basis for its damage computation. On remand, the trial court fleshed out its findings and again entered judgment for the same amount, without taking additional evidence. Based on precedent as well as considerations of equity, the First Circuit held that the date of entry of the original judgment marked the starting point for computa-

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED DECEMBER 4, 1995 — 

Gleaton, Scofield, Egan & Jones, M. Michael Egan, Jr., Baker, Donelson, Bearman & Caldwell, Thomas O. Helton, Randall L. Gibson, for appellant.

Jones, Day, Reavis & Pogue, Gregory R. Hanthorn, John H. Williamson, for appellees.

tion of postjudgment interest. See id. at 13-15.