A98A1575. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. GREEN INTERNATIONAL, INC. et al.
(509 SE2d 674)

SMITH, Judge.

Green International, Inc. and Seaboard Surety Company brought this action against Metropolitan Atlanta Rapid Transit Authority (MARTA), seeking damages in the amount of approximately $3.4 million for cost overruns and additional work on the Kensington Transit Station construction project. Green and Seaboard alleged that MARTA's plans and specifications were inadequate and defective and that MARTA did not correct the errors or

administer the contract in a timely fashion, causing a significant increase in the costs of performance.

The case was tried before a jury, which returned a verdict in favor of Green and Seaboard for $2.8 million. The trial court denied MARTA's motion for judgment notwithstanding the verdict or for new trial, and MARTA appeals, asserting that Green and Seaboard failed to prove damages proximately caused by contract deficiencies, that they failed to comply with contract conditions precedent to recovery, and that the trial court erred in admitting two exhibits and refusing to admit another. Finding no error, we affirm.

1. First, we consider MARTA's contention that Green and Seaboard failed to prove damages proximately caused by contract deficiencies. In reviewing a jury verdict after denial of a j.n.o.v. or motion for new trial, we follow well-established principles. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict and new trial will not be disturbed." (Citations and punctuation omitted.) *John Crane, Inc. v. Wommack*, 227 Ga. App. 538 (489 SE2d 527) (1997).

Construed in this manner, the evidence shows that MARTA originally engaged Stolte Construction Company to build the project after Stolte submitted a competitive bid based upon plans and specifications provided by MARTA. These plans and specifications were flawed, however, because the firm MARTA hired to coordinate the architectural and structural drawings did not complete its work. The manager of design review for MARTA characterized this firm's performance as a "total disaster." The plans and specifications contained major errors, inconsistencies, and design flaws; a Green project manager and an office engineer described the design problems as the worst they had ever seen. Stolte began discovering these problems during construction and repeatedly notified MARTA of a potential claim due to deficient plans and asked for assistance. MARTA did not adopt any of Stolte's suggestions or respond to requests to address the problem. Green and Seaboard also presented evidence that MARTA did not prepare formal change orders in a timely fashion.

Stolte experienced "financial strain" as a result of the design deficiencies and MARTA's failure to correct them; eventually Seaboard, the surety on the project, designated Green to complete the work. The problems with design discrepancies and errors did not

improve after Green took over management of the project but continued "right through the end of the concrete work."

The record is replete with evidence from many witnesses, who were personally involved in the management and supervision of the project, regarding the design deficiencies, MARTA's delay in responding, and the resulting effect on the project. According to these witnesses, the state of the plans created a "design-as-you-go situation" requiring over 350 written requests for information and clarification, or "RFIs," and over 1,000 new or revised drawings while the project was already underway. The witnesses testified that this piecemeal design scheme disrupted planning and coordination of the work, impaired efficiency, and caused additional costs, giving numerous specific examples. Green and Seaboard also presented expert witnesses who conducted a detailed evaluation of the claim, including review of all construction documents, interviews with Stolte and Green personnel, and scheduling and cost analysis. These experts analyzed the claim in terms of the plan deficiencies, the cause of loss of time and efficiency, and the value of that loss, allowing adjustments for more appropriate bid costs and expected or customary delays in similar work constructing other MARTA stations over a period of years.

MARTA contends that some of the corrective work performed by Green was compensated by change orders, that the change orders and RFIs contained waiver language, and that Green and Seaboard did not sufficiently distinguish between the claims remaining at trial and those already paid for and released. But evidence was presented that Green reserved its right to claim disruption and impact costs caused by the design deficiencies and distinguished between those reserved claims and those already compensated by change order.

Under OCGA § 13-6-2, "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." The trial court instructed the jury in the language of this Code section, proximate cause, damages as compensation for loss sustained as a result of defendant's breaches, and proof of the amount of damages. MARTA did not except to these instructions, which are a correct general statement of Georgia law.

Expert testimony will support a finding of the amount of damages caused by a party. *Sanders v. Robertson*, 196 Ga. App. 739 (1) (397 SE2d 26) (1990) (in action against contractor and architect for negligent design and construction, expert testimony authorized jury to determine amount of damages "attributable or apportionable to" contractor). "The applicable law in Georgia is OCGA § 24-9-67, which provides: 'the opinions of experts on any question of science, skill,

trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses.' Provided an expert witness is properly qualified in the field in which he offers testimony, and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility." (Citations omitted.) *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 592-593 (4) (452 SE2d 159) (1994).

Green and Seaboard presented expert testimony calculating damages caused by the design deficiencies, setting out three different methods of calculation employed in the trade, and explaining which method produced the most accurate results in this case.[1]

A very similar problem of damages analysis was presented in *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301 (464 SE2d 897) (1995), involving deficiencies in design documents prepared by the defendant that increased costs to the plaintiff construction contractor. We first remanded the trial court's bench trial judgment for clarification because of an apparent conflict between the amount of damages the trial court found and the amount awarded. *CRS Sirrine v. Dravo Corp.*, 213 Ga. App. 710, 720-721 (4) (445 SE2d 782) (1994).

On the second appeal, this Court considered and approved a revised judgment specifying the percentage of increased costs caused by the defendant and applying that percentage to various cost categories. *CRS Sirrine*, supra, 219 Ga. App. at 302, 303 (1). Our findings on the second appeal are equally applicable here. The defendant argued that reversal was required because the trier of fact found that the defendant did not cause *all* of plaintiffs' damages, and therefore should have limited the award to only those damages which were shown to result solely from specific breaches on the part of defendant. This Court rejected this proposed approach, observing that it "would establish a standard which would be almost impossible to meet, resulting in nonliability for the defendant even when it is clear that the defendant caused a substantial portion of the loss." Id. We reiterated the general approach to damages in Georgia, contrasting mere speculation with evidence that allows damages to be "estimated with reasonable certainty," despite difficulty in fixing the exact

---

[1] MARTA, relying on cases from other jurisdictions, contends that Green and Seaboard proved damages by a means known as the "total cost method" or "modified total cost method." MARTA contends both that this method is "universally disfavored" and that Green and Seaboard failed to meet the four-part test required by courts that recognize it. Several witnesses, including one of the experts who analyzed the claim, explicitly rejected MARTA's assertion that the "total cost method" was used. But whether or not this method was used here, which Green and Seaboard deny, its use is irrelevant to the standard for proof of causation or proof of damages under Georgia law.

amount. "Thus, if a plaintiff can show with reasonable certainty the total amount of damages and the degree to which those damages are attributable to defendant, that is sufficient to support an award. And that is exactly what happened in this case." Id. The trial court did not err in denying MARTA's motion for j.n.o.v. and new trial on the basis of failure to prove causation or damages.

2. (a) In its second enumeration of error, MARTA contends that Green's and Seaboard's claim is barred because Stolte failed to give timely notice of its claim under Article 39 of the general conditions to the project contract "within 15 days after the happening of the event or occurrence giving rise to the potential claim." MARTA also contends that Stolte failed to submit its claim in a timely fashion as required by Article 40 of the general conditions.

Assuming without deciding that Stolte's conduct was imputable to Green and Seaboard, this issue was for the jury. Some evidence was presented that Stolte notified MARTA approximately four months after the inception of the contract that a number of submittals had not been reviewed in a timely fashion, that this would "begin to affect the field operations and our schedule," and that Stolte would "have no other choice" but to file delay claims. In April, Stolte again notified MARTA that it would hold MARTA responsible "for any delays to the project associated with the untimely answers to RFI's." While MARTA routinely responded to Stolte's RFIs with language indicating that "the clarification given should be performed at no change in contract price or time," Stolte by letter challenged this statement and noted that it was "not in accordance with the contract."

In September 1990, Stolte sent MARTA another letter placing it on notice that a claim for damages arising from the contract documents would be forthcoming as soon as Stolte was able to provide "a detailed and accurate statement and calculation of the claim amount." Stolte followed this letter with claim submittal documents which were updated periodically to reflect revision of the claim.

Article 39 requires only that the contractor set out "insofar as possible" the amount of the claim and its potential effects upon the schedule. MARTA does not identify the particular "event or occurrence giving rise to the potential claim" that it contends should have triggered a notice of potential claim at an earlier date. Nor did MARTA assert at the time that the notice of claim was untimely. Moreover, MARTA acknowledged the existence of "a potential claim for inefficiency of design" as early as February 1990.

Ordinarily, the question of reasonable notice is for the jury. See, e.g., *Brackett v. Cartwright*, 231 Ga. App. 536, 538 (2) (499 SE2d 905) (1998) (jury question whether notice of termination during default to lessee reasonable); *Intl. Multifoods Corp. v. Nat. Egg Products*, 202

Ga. App. 263, 266 (414 SE2d 253) (1991) (question whether notice reasonable under Uniform Commercial Code "is ordinarily a factual one"); *Jones v. Cranman's Sporting Goods*, 142 Ga. App. 838, 840 (1) (a) (237 SE2d 402) (1977) (same). Under these circumstances, whether Stolte gave notice of a potential claim in a reasonable and timely manner and in accordance with the requirements of Article 39 of the general conditions was a question for the jury.

(b) MARTA also contends that Special Condition 32 of the contract, "Time of Completion," bars any claim for compensation for delays to schedule. Green and Seaboard contend that they did not seek delay damages as such. But even assuming without deciding that this special condition applies, it also states: "No claims will be allowed for delays to the reduced time schedule nor will any compensation be paid for delays to schedules *until times of completion stipulated below become affected*." (Emphasis supplied.) Green and Seaboard introduced evidence that all but one of the times enumerated in Special Condition 32 (A) through (N) were "affected" by delays. A witness for MARTA acknowledged that ten of the twelve dates were extended by change order. Under the "any evidence" rule, this at a minimum created a question for the jury as to whether the times of completion were "affected" within the meaning of Special Condition 32 and whether it applied.

3. MARTA contends the trial court erred in admitting two exhibits and excluding another.

(a) Plaintiffs' Exhibit 269 originally consisted of a copy of the project drawings admitted as plaintiffs' Exhibit 69, with 76 pages of narrative by a witness summarizing the various problems he identified on the job. MARTA objected to the exhibit on the ground that it constituted a continuing witness, and the trial court sustained the objection. Green and Seaboard then removed the narrative pages and tendered only the plans, which had certain parts highlighted in yellow ink; this modified form of the exhibit was admitted by the trial court over MARTA's objection on the same ground.

"In Georgia the 'continuing witness' objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. [Cit.]" *Tibbs v. Tibbs*, 257 Ga. 370-371 (359 SE2d 674) (1987). This objection has been applied to evidence such as the affidavit in *Tibbs*, depositions, written dying declarations, written confessions, and other statements constituting "the equivalent of depositions. [Cits.]" *Kenney v. State*, 196 Ga. App. 776, 777 (2) (397 SE2d 131) (1990). But it does not apply to items of evidence such as drawings or other docu-

ments which are "demonstrative evidence that serve only to *illustrate* testimony given by the witnesses." (Emphasis in original.) *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998) (anatomical drawings used by child witnesses); *Kenney,* supra (photographic lineup card). The narrative statements objected to by MARTA were removed from the exhibit, leaving only a copy of the project plans with certain portions outlined and shaded in yellow ink, but containing no written descriptions or indications as to the meaning of the shaded portions. Under these circumstances, the exhibit in its final form did not duplicate any oral testimony given by the witness and did not constitute written testimony or the equivalent of a deposition. The trial court therefore did not err in allowing it to go to the jury.

(b) MARTA also objects to the admission into evidence of plaintiffs' Exhibit 309, which was a summary of Green and Seaboard's claim, prepared by the witness who also prepared the claim submittal documents given to MARTA during the course of the project and discussed in Division 2 (a), above. All the claim submittal documents presented to MARTA at various times were admitted into evidence under specific limiting instructions, and this summary document was admitted in the same manner.[2] In its charge to the jury, the trial court stated: "Some evidence in this case was admitted for what is called a limited purpose. Certain of the plaintiffs' exhibits, specifically exhibits number 197-1, number 197-2, number 212, number 301, number 302 and 309, all of those plaintiffs' exhibit numbers, those were admitted by the court for a limited purpose. These exhibits of the plaintiffs were not admitted to prove the truth of the matters asserted therein but solely for the purpose of proving some other element of the case. When an exhibit is admitted for a limited purpose, which these exhibits were, the legal effect is that you, the jury, may not use these exhibits as proof of the truth of their contents or substance."

MARTA contends that it objected to the admission of Exhibit 309 and cites a single transcript reference to that effect in its statement of facts. But the actual history of the introduction and admission of this document, not revealed by MARTA, is far more complex and shows that MARTA first failed to interpose a timely objection to the trial court's admission of this exhibit for a limited purpose and then acquiesced in its admission. Failure to make a specific objection at the time the evidence was offered resulted in a waiver of MARTA's right to object on appeal. *Ryans v. State*, 226 Ga. App. 595, 597 (2)

---

[2] We recognize, however, the distinction between documents prepared by a witness for demonstrative purposes at trial and those " 'documents which are themselves relevant and admissible as original documentary evidence in a case.' [Cits.]" *Hodson v. Mawson,* 227 Ga. App. 490, 491 (2) (489 SE2d 855) (1997).

(487 SE2d 130) (1997). See also *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 130 (1) (483 SE2d 121) (1997).

At the time of MARTA's objection, the trial court observed that the exhibit had already been admitted for a limited purpose. Counsel for MARTA immediately responded, "I stand corrected. That is consistent with my recollection, also," and concluded his examination of the witness. Another lawyer for MARTA then rose to state that he did not believe he had agreed to the admission of Exhibit 309, but the trial court responded that it had been admitted for the limited purpose "to assist [the jury] in receiving and understanding the testimony of the witness and it is not admitted for the accuracy or the truthfulness of its contents or . . . its calculations." Later during the trial, this lawyer again raised the issue and stated that he now agreed that the trial court had indeed already admitted the exhibit for a limited purpose; he requested that it be included in the general instruction to the jury regarding such exhibits. Our review of the record indicates that this statement is correct. The trial court did not err in admitting this exhibit under limiting instructions.

(c) Finally, MARTA asserts that the trial court erred in refusing to admit a handwritten document discovered in Green's files on the ground that it was a business record. But the admission of a document as a business record requires that certain procedures be followed and an evidentiary showing made. "OCGA § 24-3-14, the Georgia Business Records Act, governs the admissibility of business records. Subsection (b) requires that a foundation be laid through the testimony of a witness 'who is familiar with the method of keeping the records and who can testify thereto and to facts which show that the entry was made in the regular course of . . . business at the time of the event or within a reasonable time thereafter.' [Cit.]" (Emphasis omitted.) *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 186 (3) (450 SE2d 452) (1994). The document was unsigned, and MARTA acknowledged it was never able to locate anyone who could identify it. MARTA questioned Green's witnesses repeatedly, but no one was able to identify the document or shed light on who had drafted it or why. MARTA, therefore, was unable "to produce the requisite foundation testimony of a witness who was familiar with the method of record keeping and who could testify to facts showing the entry was made in the regular course of business at the time of the event or within a reasonable time thereafter. [Cit.] The trial court properly excluded the evidence." *Hodson v. Mawson*, 227 Ga. App. 490, 492 (3) (489 SE2d 855) (1997).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 20, 1998 ▓▓▓▓▓▓▓▓▓▓▓

*Pursley, Howell, Lowery & Meeks, John R. Lowery,* for appellant.
*Smith, Currie & Hancock, Philip L. Fortune, James K. Bidgood, Jr.,* for appellees.