A00A0723. TREGLOWN v. K-MART CORPORATION.

(537 SE2d 173)

ANDREWS, Presiding Judge.

Charles Treglown appeals from the trial court's denial of his motion for new trial following the jury's verdict for K-Mart Corporation on his loss of consortium claim. Mrs. Ailene Treglown was

awarded $180,000 for injuries suffered when she fell in Wesson oil spilled in an aisle, and that judgment has been satisfied.

> "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict and new trial will not be disturbed." (Citations and punctuation omitted.) [Cit.]

*MARTA v. Green Intl.*, 235 Ga. App. 419, 420 (1) (509 SE2d 674) (1998).

Here, the evidence was that Mrs. Treglown, then 43 years old, fell on July 23, 1995. She suffered a concussion, bruised knee, and broken right hip. The hip was operated on by orthopedic surgeon Dr. Klasson, who inserted pins. Mrs. Treglown was hospitalized for several days and then recuperated at home. Because of discomfort, the pins were removed on October 7, 1996. Dr. Klasson last saw her on November 21, 1996, at which time she had a full range of motion and was walking without assistance. Dr. Klasson's opinion was that the hip had healed and he saw no reason why she could not have a normal life. There was no reason, in his opinion, that the injury should affect her physical relationship with her husband.

Mrs. Treglown was seen by Dr. Bell, another orthopedist, in December 1995 for complaints of pain in her right knee. Dr. Bell performed an arthroscopic exam and found some evidence of a bone bruise, but nothing of note. She was released by him to be seen only as needed, and Dr. Bell opined that this injury should not cause any restrictions in her activity.

On February 28, 1997, Mrs. Treglown saw Dr. Flandry, a neurologist, for pain in her back, right knee, and right hip. Dr. Flandry examined her and found a normal neurological exam. He injected her with steroids and prescribed physical therapy for some hip atrophy which was due to lack of use of her leg. Within a month, her condition was much better. Mrs. Treglown was also having some reflex sympathetic dystrophy, which Dr. Flandry expected to resolve.

Dr. Sloan, a sports medicine specialist, saw Mrs. Treglown on October 6, 1998, after a referral from Dr. Flandry for treatment of "possible reflex sympathetic dystrophy," for which he prescribed

nerve blocks.

Mrs. Treglown also sought a second neurological opinion from Dr. Stern on December 18, 1995, because of headaches and diminished concentration and memory. Dr. Stern reviewed her CT scan and MRI examination and examined her, finding an essentially normal neurology examination with minimal cognitive changes. He found no objective evidence of brain damage but opined that some patients seem to have persistent complaints until litigation over their injuries is completed. Dr. Stern saw Mrs. Treglown again in July 1997 and prescribed medication for headaches.

Dr. Pratt, a psychiatrist, saw Mrs. Treglown 13 times between September 26, 1995 and October 20, 1998. He diagnosed depression, an underlying obsessive compulsive personality, and post-traumatic stress disorder. According to Dr. Pratt, obsessive compulsive personalities are more prone to post-traumatic stress disorder than others. Of the five manifestations of depression identified by Dr. Pratt, he acknowledged that three of them were not related to her fall. He also acknowledged that the litigation might impede Mrs. Treglown's ability to recover.

Regarding loss of consortium, Mr. Treglown testified that, since the accident, Mrs. Treglown's personality had changed. Also, before the accident their sexual relationship had been good, but since then it had been "not much."

Mrs. Treglown testified that she had previously done farm, yard, and housework but, due to her lack of energy and fatigue, she was no longer doing it. She had also helped Mr. Treglown in his private electrical business, which he did in addition to working for Georgia Power, but no longer did that. The Treglowns' daughter and son-in-law lived with them, and the daughter had been taking care of the house since the accident. Mrs. Treglown acknowledged that she walked more since the accident than she had before and that the reason she no longer rode her bicycle was her fear of falling, not inability to ride it.

While Mrs. Treglown claimed special damages of over $300,000, the jury awarded her only $180,000.

The pretrial order entered in this case contained a proposed verdict form which provided three possible verdicts: for K-Mart; for Mrs. Treglown in the amount of _____; and for Mr. Treglown in the amount of _____. That form was given to the jury and the court charged them that they were to first consider Mrs. Treglown's case and, only if they awarded her a verdict, were they to consider Mr. Treglown's case.

Upon return of a verdict for Mrs. Treglown, counsel were advised that there was only a verdict for Mrs. Treglown. The court inquired of the jury: "you did not indicate a verdict with respect to Roman

Numeral II [Mr. Treglown]." The jury forewoman stated "[t]hat's correct. We didn't." The court then instructed the jury that there must be some verdict of some kind regarding Mr. Treglown and directed them to deliberate further.

No objection to this procedure was voiced by plaintiffs, and no motion for directed verdict was made regarding liability on Mr. Treglown's loss of consortium claim. Thereafter, a verdict was returned in favor of K-Mart on this claim.

Here, however, Mr. Treglown argues that there was no conflict in the evidence and he was entitled to a verdict as a matter of law, which would have been the standard for directing a verdict or judgment notwithstanding the verdict. OCGA § 9-11-50; *Joiner v. Lane*, 235 Ga. App. 121, 122 (1) (508 SE2d 203) (1998). Since Mr. Treglown passed up the opportunity to make such motions below and left the matter in the breast of the jury, all we consider here is whether there is any evidence to support the jury's verdict. *MARTA*, supra.

Here, unlike in *Groover v. Dickey*, 173 Ga. App. 73 (325 SE2d 617) (1984) and *Clark v. Wright*, 137 Ga. App. 720 (224 SE2d 825) (1976) where the evidence was undisputed, there was conflicting evidence regarding whether Mrs. Treglown had suffered brain damage and whether some of her complaints, i.e., fatigue and lack of energy and interest in sex, were attributable to her physical injuries or her obsessive compulsive personality and depression. Also, in *Clark*, the husband had damages in the form of payment of the wife's medical bills, not present here.

> "This court does recognize the rule that a consortium action is derivative and when it is tried along with the primary action, a jury cannot render inconsistent verdicts." *Johnson v. Loggins*, 211 Ga. App. 265, 266 (438 SE2d 711) (1993); *Gurley v. Hinson*, 194 Ga. App. 673, 675 (391 SE2d 483) (1990). "However, in view of the evidence produced at trial, we find that the verdicts rendered are not inconsistent." Id.

*Johnson v. Watson*, 228 Ga. App. 351, 352 (2) (491 SE2d 827) (1997). See also *Grogan v. Bennett*, 208 Ga. App. 102, 103 (6) (430 SE2d 94) (1993).

There was no error in the trial court's denial of Mr. Treglown's motion for new trial.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JULY 11, 2000 —
RECONSIDERATION DENIED JULY 31, 2000

*Cook & Connelly, Bobby Lee Cook, Smith, Price & Wright, Charles G. Price,* for appellant.

*Strawinski & Goldberg, James S. Strawinski, Nicole L. Wolfe, Dennis, Corry & Porter, George A. Koenig,* for appellee.