A02A0436. FLOURNOY v. GOBLE et al.
A02A0437. GOBLE v. FLOURNOY.
(569 SE2d 861)

PHIPPS, Judge.

Tabatha Goble sued Dr. Henry Flournoy for medical negligence, claiming that she suffered severe injuries because he perforated her small bowel during a diagnostic laparoscopic surgical procedure and failed or refused to acknowledge that the problems she experienced after surgery could have been caused by a bowel injury. Her husband, Claude Goble, sued Flournoy for loss of consortium. The jury awarded Tabatha Goble $150,000 for her injuries, but awarded Claude Goble nothing. Flournoy appeals in Case No. A02A0436, claiming that the trial court abused its discretion by excluding from evidence the consent form Tabatha Goble signed prior to the surgery and by failing to give several jury charges he requested. We find no merit in Flournoy's claims and affirm the judgment against him. Claude Goble appeals in Case No. A02A0437, claiming that the trial

---

[8] *Tidwell v. Critz,* 248 Ga. 201, 204 (1) (282 SE2d 104) (1981).
[9] Id.
[10] See id.

court erred by entering a judgment awarding no loss of consortium damages despite the jury's award of personal injury damages to his wife. We agree and reverse and remand for a new trial on the issue of damages only.

On February 8, 1994, Flournoy performed a diagnostic laparoscopy on Tabatha Goble to determine the cause of pelvic pain. She was discharged that day and was told that she should be able to return to work in two or three days. Flournoy did not realize that during the procedure, he had perforated or injured Goble's bowel with an instrument called a trocar, which he had inserted into her abdomen.

Over the next ten days, Goble suffered from nausea, vomiting, and pain. She was unable to get out of bed during that period without assistance and left her bed only to go to the bathroom. Goble's mother stayed with her during the days after the surgery and called Flournoy's office several times to inform him of her daughter's nausea and vomiting. Flournoy's office staff called in two different prescriptions for nausea medication. When neither medication worked, a nurse came to Goble's home and gave her an injection. It did not help either. Claude Goble informed another doctor in Flournoy's office over the weekend of his wife's continued nausea and vomiting and told him that her only previous stomach problem had been an ulcer several years earlier. That doctor thought that Tabatha Goble's symptoms were consistent with an ulcer and authorized her to take Zantac and Maalox. When his wife did not improve, Claude Goble called Flournoy's office again on February 18 and left a message with the answering service. When Flournoy returned the call, Tabatha Goble answered and informed him that they were going to the emergency room.

Shortly after she arrived at the hospital, Tabatha Goble underwent emergency exploratory surgery. The surgeon testified that her bowel had two small holes in it, which must have resulted from the first surgery, and that her condition upon arrival at the emergency room was life-threatening. After the emergency surgery, Tabatha Goble was hospitalized for almost a month. When she was discharged, she recuperated at her mother's house for almost two months. During that time, she was very depressed and could not do anything with her husband except sit in the same room with him.

The emergency surgery left Tabatha Goble with a large visible scar on her abdomen. She no longer has a navel. She later had additional surgery to repair a hernia likely caused by the emergency surgery and to help reduce her scar. After her hospitalization for that surgery, she again recuperated at her mother's house for some period of time.

## Case No. A02A0436

1. Flournoy claims that the trial court erred by granting the Gobles' motion in limine to exclude evidence of the consent form signed by Tabatha Goble before the laparoscopic surgery because the consent form was relevant and admissible.

The consent form listed "possible injury to bowel" as one of the possible risks of the laparoscopic procedure. At trial, Flournoy argued that he wanted to introduce the form to show that an injury to the bowel was a known risk of the procedure and that Tabatha Goble was made aware of the risk and nevertheless agreed to undergo the procedure. He also argued that the form was relevant to his defense that an injury to the bowel is a known and accepted complication that can and does occur in the absence of negligence.

There was no issue of whether Tabatha Goble consented to the procedure or whether she was properly informed of its risks. Thus, the consent form would not be relevant for those purposes. But the consent form would be relevant to whether an injury to the bowel was a known risk of the procedure. The answer to that question, however, was made clear by other evidence admitted without objection. Two of Flournoy's expert witnesses and the Gobles' expert all testified that an injury to the bowel is a known risk of laparoscopic surgery. The Gobles' expert and one of Flournoy's experts also testified that a bowel injury can occur even without a violation of the standard of care.

The admissibility of evidence rests in the sound discretion of the trial court.[1] We find no abuse of discretion here, given the cumulative undisputed evidence that an injury to the bowel was a known risk of the procedure Flournoy performed, and that a bowel injury could occur without negligence.[2]

2. Flournoy claims that the trial court abused its discretion by failing to charge the jury on the duty to lessen damages, avoidance of consequences, equal negligence, and comparative negligence. He argues that evidence was presented that the Gobles failed to convey accurate or complete information to his office and that they failed to advise his office of changes in Tabatha Goble's condition.

All of the charges Flournoy requested required evidence of some degree of negligence by Tabatha Goble. Flournoy argues that the charges were justified because Tabatha Goble did not speak or attempt to speak to Flournoy herself until ten days after her surgery

---

[1] *Deese v. Carroll City County Hosp.*, 203 Ga. App. 148, 150 (2) (416 SE2d 127) (1992).

[2] See *Whitley v. Gwinnett County*, 221 Ga. App. 18, 20 (3) (470 SE2d 724) (1996); *Menendez v. Jewett*, 196 Ga. App. 565, 566-567 (2) (396 SE2d 294) (1990) (physical precedent); see also *Allen v. State*, 247 Ga. App. 10, 14 (2) (543 SE2d 45) (2000).

and that although she had abdominal pain beginning at 4:00 a.m. on February 18, she did not go to the hospital until after 9:00 p.m. But the evidence also showed that during the ten days following her surgery, Tabatha Goble suffered from nausea and vomiting, was unable to get out of bed without help, and followed whatever medical advice was given when her mother and husband called Flournoy's office several different times. Flournoy has cited no evidence that Tabatha Goble's damages would have been different if she had gone to the hospital earlier on February 18. Because the evidence cited by Flournoy is insufficient to raise an inference of negligence by Tabatha Goble, the trial court properly refused to give the requested charges.[3]

## Case No. A02A0437

3. Claude Goble claims that the trial court erred by entering judgment awarding no loss of consortium damages despite the jury's award of damages to his wife. He argues that the verdicts are inconsistent.

"[W]here [an] injured person and [her] spouse combine their separate claims in one lawsuit[,] the loss of consortium claim is derivative, and where one jury has heard evidence on the same issue it cannot render inconsistent verdicts."[4] Whether the verdicts rendered are inconsistent depends on the facts of the particular case.[5]

Tabatha Goble was hospitalized for almost a month after her emergency surgery. Claude Goble testified that for two months after his wife's discharge, he could not sleep in the same bed with her and they could not do anything together except sit in the same room. She later underwent additional surgery, which also required hospitalization and a period of recovery. This evidence was undisputed.

Flournoy argues that the following exchange supports the jury's award of no damages to Claude Goble:

FLOURNOY'S ATTORNEY: And I know your wife had a tough time and been through a rough — and both of you have. A rough go of it in the hospital there, but this has not affected your relationship in any way with your wife, has it?
CLAUDE GOBLE: No.

We disagree with Flournoy. This testimony does not contradict evidence of difficulties the couple experienced as a result of surgery per-

---

[3] See *Ga. Kraft Co. v. Faust*, 200 Ga. App. 686, 688 (1) (409 SE2d 247) (1991); *Lovell v. Howard*, 182 Ga. App. 891 (2) (357 SE2d 600) (1987).

[4] *Groover v. Dickey*, 173 Ga. App. 73, 74 (1) (325 SE2d 617) (1984).

[5] See *Gurly v. Hinson*, 194 Ga. App. 673, 675 (9) (391 SE2d 483) (1990).

formed by Flournoy. Moreover, Claude Goble's ability to maintain a good relationship with his wife despite hardship should not foreclose his claim for loss of his wife's "society, companionship, love, affection, aid, services, cooperation, sexual relations and comfort" during her hospitalization and recovery.[6]

We find the evidence supporting Claude Goble's loss of consortium claim is uncontradicted and reverse that portion of the trial court's judgment.[7] Claude Goble is entitled to a new trial on the issue of damages.[8]

*Judgment affirmed in Case No. A02A0436. Judgment reversed and case remanded in Case No. A02A0437. Mikell, J., concurs. Andrews, P. J., concurs in Case No. A02A0437 and concurs in judgment only in Case No. A02A0436.*

DECIDED JUNE 24, 2002 —
RECONSIDERATION DENIED JULY 26, 2002.

*Oliver, Maner & Gray, William P. Franklin, Jr., Terri M. Yates,* for appellant.
*Ronald W. Hallman, Berrien L. Sutton,* for appellees.

---

[6] See *W. J. Bremer Co. v. Graham,* 169 Ga. App. 115, 116 (312 SE2d 806) (1983) (definition of consortium).

[7] *Groover,* supra; *Nelson & Budd, Inc. v. Brunson,* 173 Ga. App. 856, 859 (6) (328 SE2d 746) (1985); compare *Treglown v. K-Mart Corp.,* 245 Ga. App. 428, 431 (537 SE2d 173) (2000) (conflicting evidence was presented regarding whether the symptoms supporting the loss of consortium claim were caused by the defendant's negligence or were due to a pre-existing condition).

[8] *Groover,* supra; *Nelson & Budd,* supra.