## A11A0965. McDOWELL et al. v. HARTZOG et al.
### (718 SE2d 20)

MIKELL, Judge.

Hershell McDowell[1] appeals from the trial court's denial of his motion for new trial following a jury verdict in favor of Gregory Hartzog and his employer Optimus Solutions, LLC, on McDowell's claims arising from a traffic accident. Finding no error, we affirm.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict and new trial will not be disturbed.[2]

So viewed, the evidence was that, on September 2, 2005, the Friday before Labor Day, around 5:00 p.m., McDowell had just left the hospital in Dalton, Georgia, where his wife had given birth to their daughter. Driving his pickup truck, McDowell proceeded west in the inside lane of four-lane Walnut Avenue, crossed I-75, and approached the traffic light controlling traffic exiting southbound I-75 at Walnut Avenue. As McDowell approached the traffic light, it was red. According to him, he began slowing and saw the light turn green. McDowell acknowledged that the eastbound traffic on Walnut was still stopped as he went through the light. McDowell said a black vehicle then crossed in front of him, causing him to steer to the right,

---

[1] Cindy McDowell, his wife, alleged a loss of consortium claim.

[2] (Citations and punctuation omitted.) *MARTA v. Green Intl.*, 235 Ga. App. 419, 420 (1) (509 SE2d 674) (1998).

lock his brakes, and skid into an Isuzu Rodeo attempting to turn eastbound onto Walnut from College Avenue. McDowell estimated his speed at the point of impact as 42 or 43 mph, in a 40 mph speed zone. McDowell's truck left 30 feet of skid marks.

Robbie Griggs was a passenger in her husband's car as they were coming off the southbound I-75 exit onto Walnut Avenue. She did not recall whether they had to stop at the light at the end of the exit, but they turned right onto Walnut Avenue heading toward the next intersection where College Avenue came into Walnut. At that point, Griggs heard brakes squealing and then saw McDowell's truck come by their car on the driver's side, with its tires smoking. As the Griggs' car stopped, she saw McDowell's truck veer to the right into their lane and strike an Isuzu Rodeo, driven by Hartzog, coming out of College Avenue. According to Griggs, the Rodeo was stopped when it was hit and was approximately halfway across the outside lane of Walnut Avenue.

Victoria Chamberlain, a registered nurse, was a passenger in her mother's car as they were leaving the Red Lobster on the west side of I-75. As Chamberlain was looking up and down Walnut watching for traffic, she heard the squeal of brakes and saw McDowell's pickup truck hit Hartzog's Isuzu. She described the pickup as going very fast. According to her, Hartzog was inching out into the intersection. Chamberlain saw McDowell climb out the window of the door of his pickup truck and walk to the rear of the truck. She went to aid Hartzog, whose car was struck between the driver's door and the front wheel of the Isuzu.

Hartzog was in Dalton working for Optimus Solutions that day. He was to work the entire weekend at Shaw Carpeting to transition Shaw to a new large scale computer data storage system. He went to check into his motel on College Avenue late in the afternoon so he would not lose his reservation. As he was returning to Shaw, he approached the College and Walnut Avenues intersection and saw several vehicles waiting to enter Walnut. When he got up to the stop line, his view to the left was partially blocked by trees. As he was looking for gaps in the traffic in order to turn left, Hartzog saw McDowell's pickup coming toward him, saw the smoke coming from its tires, and was hit by McDowell. Hartzog did not see any black vehicle.

Whitfield County Sheriff's Deputy Andrew Hambrick was called as a witness by McDowell. He was also traveling westbound on Walnut and testified that he came up on the accident shortly after it happened. Upon cross-examination by Hartzog's attorney, Deputy Hambrick testified extensively about the changes which had been made in the intersection of College and Walnut Avenues between 2005 and the date of trial. These changes included the cutting of

trees obscuring the view of a driver exiting College, moving the stop line for those exiting College further into the outer lane on Walnut, and turning that lane into a right turn only lane.

McDowell also testified that, following his accident, the stop line on College was brought forward to what had been the middle of the outside westbound lane of Walnut, where his accident occurred. Further, he acknowledged that the shrubs and trees obscuring the eastbound view of a driver exiting College had been cut.

1. McDowell's first enumeration is that the trial court erred in charging the jury on his failure to obey a stop light, which was not adjusted to the evidence.

(a) We first consider the adequacy of the objection voiced below by McDowell. At the charge conference following the close of evidence, when Hartzog's supplemental request to charge based on OCGA §§ 40-6-20 and 40-6-21 was discussed, McDowell's counsel stated only "[a]s long as it's noted it's over my objection, we're good." Following the giving of the charge to the jury, including the stop light charge, the trial court inquired regarding errors in the charge. In response, McDowell's counsel stated "[e]xceptions that we had, the ones we talked about the other day. Where did they go? *I know the one on stop lights, we excepted to.*" (Emphasis supplied.)

This was an inadequate objection to the charge as given.[3]

(b) The additional arguments made by McDowell regarding running a red light and proximate cause were not the subject of a motion for directed verdict, motion for judgment notwithstanding the verdict, motion for new trial, or other objection below and will not be considered here for the first time.[4]

2. In his second enumeration, McDowell argues that the trial court erred in admitting evidence of the medical treatment rendered to Hartzog as a result of the accident.

During Hartzog's testimony, he was asked by his counsel what tests, other than an x-ray, were performed on him. In response, he said "[t]hey did a CT scan, because they were concerned." At that point, McDowell objected on relevancy grounds, and Hartzog did not complete his answer.

The record reveals, however, that McDowell elicited numerous

[3] See OCGA § 5-5-24 (a); *Sims v. GT Architecture Contractors Corp.*, 292 Ga. App. 94, 97 (2) (663 SE2d 797) (2008) (regarding a claim that the trial court gave an erroneous jury instruction, "an objection made at a charge conference before the charge is given does not preserve a charging issue for appellate review") (punctuation and footnote omitted); accord *Thompson v. Princell*, 304 Ga. App. 256, 261 (b) (696 SE2d 91) (2010); *Tucker Nursing Center v. Mosby*, 303 Ga. App. 80, 87 (5) (692 SE2d 727) (2010).

[4] Generally, "[a]n argument not raised in the trial court is waived and cannot be raised for the first time on appeal." (Footnote omitted.) *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007).

facts regarding Hartzog's injuries and treatment. In his opening argument, McDowell's counsel stated: "[McDowell] went to the emergency room, from the scene, in an ambulance, as did Mr. Hartzog. They rode together."

On direct examination of the investigating police officer, counsel for McDowell elicited testimony that Hartzog's vehicle had been moved rearward to allow EMS to remove him from his vehicle.

McDowell also called Michael Dickson, his brother-in-law, who came to the wreck scene shortly after the accident. Dickson testified, in response to questions from McDowell's attorney, that emergency personnel were "running around" trying to extract Hartzog from his vehicle and that, when he later saw Hartzog at the emergency room, he was on a stretcher.

Finally, during direct examination of Chamberlain, the nurse who went to Hartzog's aid, McDowell's counsel asked her about Hartzog's condition and she responded that she was "concerned about a neck injury on him."

Having himself elicited evidence regarding Hartzog's injuries and treatment, McDowell cannot now complain of Hartzog's doing so.[5]

3. McDowell's third and fourth enumerations are that the trial court erred in admitting testimony and allowing counsel to argue that the intersection was unsafe and in allowing into evidence photographs showing that the intersection had been reconfigured after the collision.

Again, however, McDowell introduced evidence of the reconfiguration of the intersection through his witnesses. Dalton Police Officer Jason Thompson, who investigated the accident and was called by McDowell as a witness, testified on direct examination that the configuration of the intersection had been changed; that for years authorities had "tried to figure out a way to make it a safer intersection"; that DOT owns the highway; and that the trees and shrubs had been cut down. Testimony was also elicited by McDowell from his expert, Dr. Ronald Cox, regarding the reconfiguration of the intersection.

When Hartzog tendered his photo exhibits showing the before and after configurations of the intersection, McDowell's counsel stated that he had no objection to them.

Again, McDowell may not now complain of the introduction of this evidence.[6]

---

[5] *Ahmed v. Clark*, 301 Ga. App. 426, 428 (688 SE2d 361) (2009); cf. *Thrash v. Rahn*, 249 Ga. App. 351, 352 (2) (547 SE2d 694) (2001).

[6] Id.

There was no error in the trial court's denial of McDowell's motion for new trial.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED SEPTEMBER 22, 2011 —
RECONSIDERATION DENIED OCTOBER 20, 2011 —

*David J. Blevins*, for appellants.

*Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, W. Jason Pettus, Downey & Cleveland, Sean L. Hynes*, for appellees.