A00A1455. BARBAZZA et al. v. INTERNATIONAL MOTOR
SPORTS ASSOCIATION, INC. et al.
(538 SE2d 859)

ELLINGTON, Judge.

Fabrizio Barbazza, Fimesa SPA, and Jonathan Marketing & Sport, Inc. appeal from the trial court's order granting summary judgment to International Motor Sports Association, Inc. ("IMSA"), Road Atlanta, Ltd., and Ray Hendricks. The appellants' suit against the appellees asserted tort and contract theories of recovery for physical injuries and property damage resulting from a crash during a race. The appellants also appeal the trial court's order striking portions of certain affidavits. Finding no error, we affirm.

1. After reviewing the record, we conclude the trial court did not abuse its discretion in striking portions of the two affidavits of witness Antonio Ferrari as to matters which were not relevant or material, which were legal conclusions, which were outside his area of expertise, and which commented on the credibility of other witnesses. *Chandler Exterminators v. Morris*, 262 Ga. 257, 258-259 (3) (416 SE2d 277) (1992). Further, the trial court did not abuse its discretion in striking portions of the affidavit of plaintiffs' attorney Rob-

ert J. Hantman on the basis that it was an attempt to place inadmissible information before the court. Id.

2. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). Our review is de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in this light, the record reveals that Barbazza was involved in a crash at the Road Atlanta Grand Prix on April 30, 1995. Fimesa SPA owned the car Barbazza drove, and Jonathan Marketing sponsored and employed Barbazza to compete in the race. IMSA sanctioned, organized, and conducted the race on the racetrack in Braselton, Georgia, owned and operated by Road Atlanta, Ltd. Federation Internationale de l'Automobile ("FIA") is the European sanctioning organization recognized by IMSA as the "supreme" motor sports authority; a FIA listing allows a race to be billed as a "full international event."

Road Atlanta is a 2.52-mile track with nine right turns and three left turns. The terrain is hilly, compared to other racetracks, and challenges the drivers with numerous "blind brows" and narrow stretches where visibility and opportunities to pass slower cars are limited. The April 30, 1995 Grand Prix featured three classes of cars in one race. The fastest class in the race was the world sports car ("WSC"), which included the Ferrari prototype Barbazza drove. The other two classes, GTS-1 and GTS-2, are production cars with much lower maximum speeds than the WSCs, with GTS-2 cars being the slowest. Some cars were driven by amateur drivers, including Hendricks. In such a combined race, the WSCs would be traveling much faster than the GTS cars, overtaking and passing them every several laps. As a result, skill in passing slower-moving cars was as important to a driver's success as speed. Earlier in 1995, Barbazza raced in two such mixed-class races, one at Sebring and one at Daytona.

To be allowed to race under IMSA's code, each car and driver had to qualify by recording a certain lap time during qualifying rounds. The IMSA code provided a formula for determining the minimum qualifying requirements, based on the average of the top three finishers. For the Grand Prix, IMSA officials set the requirements at 110 percent within each class and 130 percent "overall." Therefore, for a WSC driver to qualify, he was required to post a lap time no greater than 110 percent of the average of the fastest three WSC times. For a GTS-2 driver to qualify, he was required to post a time no greater than 110 percent of the average of the fastest three GTS-2 car times and no greater than 130 percent of the average of the fastest three WSC times.

Several of the WSC drivers were concerned about the participation of GTS cars in the race in light of the unique features of the Road Atlanta track and the difference in speed between the WSCs and the GTS cars. In the two days before the race, there was a series of meetings where the drivers raised these concerns with IMSA officials. The WSC drivers insisted that the qualifying standards be strictly enforced. In the end, the IMSA officials allowed drivers to race who had not posted the minimum qualifying requirements, including Hendricks, but promised to "black flag" and remove from the race those drivers who were not maintaining an adequate pace. The drivers also raised a concern about the construction of the tire walls. The tires were not securely anchored to each other and to a guardrail in accordance with the FIA code.

Forty-one cars started the race. Only twenty minutes into the three-hour race, the fastest WSCs, in their thirteenth lap, had lapped Hendricks and Joe Cogbill, both driving GTS-2 cars, three times. As Hendricks entered the straightaway between Turn 12 and the finish line, Cogbill's car tapped Hendricks' rear bumper, causing Hendricks to spin around, and both cars hit the tire wall on the left. Crash debris and tires dislodged from the wall spilled onto the track as three WSCs came out of Turn 12. The first WSC driver moved to the right and avoided the debris. Barbazza, driving the second WSC, also pulled to the right and away from the debris but spun out. The third WSC, driven by Jeremy Dale, then "t-boned" Barbazza's car at close to 150 mph, literally splitting it in half. Barbazza was injured in the crash and has no memory of the race or the drivers' meetings before the race.

As a condition of entry, Barbazza signed a waiver of liability and indemnity agreement releasing the track owner (Road Atlanta), the sanctioning organization (IMSA), and participants (including Hendricks) from damage "whether caused by the negligence of the releasees or otherwise." To the extent the appellants asserted a claim for simple negligence, the release Barbazza executed demanded summary judgment. *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460-461 (364 SE2d 580) (1987).

3. An injured party may recover for acts of gross negligence despite a valid release for negligence. See *Turner v. Walker County*, 200 Ga. App. 565, 566 (2) (408 SE2d 818) (1991); *Hawes v. Central of Ga. R. Co.*, 117 Ga. App. 771, 772 (162 SE2d 14) (1968). See also *Wade v. Watson*, 527 FSupp. 1049, 1051-1052 (N.D. Ga. 1981). But, in this case, the appellants identified no evidence of gross negligence on the part of any of the appellees. With regard to IMSA's decision to allow Hendricks to race, the IMSA code gave the race officials discretion to waive the qualifying requirements. No evidence was presented that this discretion was exercised in a careless manner.

Similarly, as to the failure to "black flag" Hendricks before he collided with Cogbill, the decision to remove a racer from the race is a complex, discretionary one. No evidence was presented that this discretion was exercised in a careless manner. With regard to any failure to comply with FIA safety rules and standards, for example, as to qualifying requirements or tire wall construction, no evidence was presented that either IMSA or Road Atlanta was required to apply FIA standards. Furthermore, the appellants presented no expert evidence that Road Atlanta's construction and maintenance of the tire walls violated industry standards. Summary judgment on the appellants' claims for gross negligence was appropriate. *Levine v. Keene*, 178 Ga. App. 832 (344 SE2d 684) (1986).

4. The appellants' theories of fraud and misrepresentation and violation of assumed duties were based on IMSA's and Road Atlanta's alleged failure to address the drivers' safety concerns as promised, specifically, by "black flagging" slow drivers and by upgrading the tire wall. The appellants argue that by failing to take these actions IMSA and Road Atlanta exposed Barbazza to greater risks than he willingly assumed. We cannot agree. There is no dispute that Barbazza was an elite professional race car driver who knew that racing is a dangerous profession. There is no dispute that Barbazza knew that the April 30, 1995 race would include slower GTS cars and that racing a WSC in a race with GTS cars was dangerous due to the difference in speeds. There is no dispute that Barbazza knew that the Road Atlanta track was especially challenging. There is no dispute Barbazza knew race officials were allowing drivers who had not satisfied the qualifying requirements to compete. There is no dispute Barbazza knew that in *any* race other drivers can have accidents or mechanical problems resulting in obstacles on the racetrack. Considering all of these factors, the only reasonable conclusion is that Barbazza assumed the risks of his injuries as a matter of law. *Young v. Brandt*, 225 Ga. App. 889, 891-893 (3) (485 SE2d 519) (1997).

As to the tire wall, there was no evidence any representative from Road Atlanta promised to rebuild the tire walls before the race to comply with FIA standards. Further, there is no dispute Barbazza observed the tire walls before the race and could have seen that no changes had been made to their construction. Because Barbazza understood the risk of racing on the track under prevailing conditions, summary judgment was appropriate. *Young*, 225 Ga. App. at 891-893 (3).

5. Finally, there was no evidence that the appellants' conduct caused the Barbazza/Dale crash. The appellants claimed IMSA knew Hendricks had "a known *propensity* to cause a crash." Although we view the evidence and any inferences which logically flow from the evidence in the light most favorable to the appellants on the issue of

causation, "a reasonable inference sufficient to create a triable issue of fact cannot be based on mere possibility, conjecture, or speculation." *Ogletree v. Navistar Intl. Transp. Corp*, 245 Ga. App. 1, 3 (535 SE2d 545) (2000). In this case, the appellants presented only conjecture or speculation, not evidence, that Hendricks' speed or manner of driving caused Cogbill to tap his rear bumper. Because the evidence adduced was insufficient as a matter of law to establish that IMSA's conduct in allowing Hendricks to enter and remain in the race caused the Barbazza/Dale crash, we conclude that the trial court properly granted the appellees' motion for summary judgment. *Shadburn v. Whitlow*, 243 Ga. App. 555 (533 SE2d 765) (2000).

As to the tire wall, the appellants contend Road Atlanta's failure to anchor the tires in a certain way caused the crash because loose tires spilled onto the track after the Hendricks/Cogbill crash. But the only evidence of the role of debris in causing the Barbazza/Dale crash is Dale's statement that he hit Barbazza's car when he steered away from pieces of race cars, *not* tires from the wall. Again, summary judgment was appropriate. *Jackson v. K-Mart Corp.*, 242 Ga. App. 274 (529 SE2d 404) (2000).

6. The appellants contend IMSA breached a contractual obligation inherent in the entry form and supplemental regulations to conduct the race in accordance with the FIA code. The entry form specifically provides that the race was sanctioned by IMSA and would be held under the 1995 IMSA code and the supplementary regulations. We conclude the language in the entry form that the race was "listed by FIA as a full international event" does not express plainly and explicitly IMSA's agreement to strictly implement all FIA standards, and we are not willing to imply such an undertaking from the language of the document. Accordingly, summary judgment was appropriate. *Donaldson v. Olympic Health Spa*, 175 Ga. App. 258, 259 (1) (333 SE2d 98) (1985).

The appellants also contend the drivers were intended to be third-party beneficiaries of the 1995 Sanction Agreement between IMSA and Road Atlanta which contemplated strict enforcement of the IMSA code, including the qualifying requirements. But it is not apparent from the language of the sanction agreement that the contracting parties intended to confer a direct benefit upon Barbazza to protect him from physical injury. *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994). Thus, summary judgment was proper.

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 6, 2000.

*Sartain, McKay & Crowell, Frank R. McKay, Strongwater &*

*Cherniak, Leeza R. Cherniak*, for appellants.

McLain & Merritt, M. David Merritt, Nall & Miller, George R. Neuhauser, Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb, Eric J. Sharon, for appellees.