A01A0165. FLANIGAN v. EXECUTIVE OFFICE CENTERS, INC. et al.
(546 SE2d 559)

ELDRIDGE, Judge.

In August 1998, appellant-plaintiff Gary Flanigan d/b/a Curry, Street, Gardner & Flanigan ("Flanigan"), a movie production company, and appellee-defendant Executive Office Centers, Inc. d/b/a HQ Business Centers of Atlanta ("Executive")[1] entered into a business identity service agreement ("service agreement"). Under the service agreement, Executive provided Flanigan its basic identity service, a service inclusive of telephone answering, a business address for use on client stationery, use of a facsimile number and a telephone number, and mail and package handling. By other provisions of the service agreement, the parties agreed to waive any claims for damages arising under the agreement,[2] substituting therefor liquidated damages limited to an adjustment in the client's billing in an amount equal to the charge for such service for the period during which the failure, delay, or disruption continued.

A dispute as to alleged overcharges arose between the parties as a result of a bill Executive sent Flanigan in October 1998. After adjusting the billing downward approximately a month later, appellee-defendant Julie Rainey, an Executive employee, demanded payment within 24 hours. Letters were thereafter exchanged in which

---

[1] Flanigan amended its complaint to substitute Executive for HQ Business Centers of Atlanta as appellee-defendant.

[2] The services agreement pertinently provided:
THE CLIENT [Flanigan] EXPRESSLY AGREES TO WAIVE, AND AGREES NOT TO MAKE ANY CLAIM FOR DAMAGES, DIRECT OR CONSEQUENTIAL, ARISING OUT OF ANY FAILURE TO FURNISH ANY UTILITY, SERVICE OR FACILITY, ANY ERROR OR OMISSION WITH RESPECT THERETO, OR ANY DELAY OR INTERRUPTION OF THE SAME.
(Emphasis in original.)

Flanigan accused Rainey of a "PMS" approach to management, and Executive terminated its services to Flanigan, stating that the account was past due. Subsequently, Eugene D. Vezzani, President of Universal MetroMedia Capital Corporation ("UMMCC"), informed Flanigan by letter that UMMCC had rescinded its $6,000,000 commitment to fund a movie which Flanigan was to produce — this, because of his inability to contact Flanigan at its Executive-provided telephone number or business address.

Flanigan filed suit against Executive, alleging breach of contract, negligence, tortious interference with contractual relations, and punitive damages, pertinently seeking special[3] damages in the amount of $6,000,000 on the negligence count.[4] The state court granted Executive summary judgment on all counts of Flanigan's complaint. Flanigan appeals, contending that the state court erred insofar as it granted Executive summary judgment on its negligence claim because: (1) the exculpatory clause in the service agreement between the parties was insufficient to waive Executive's negligence in terminating services to Flanigan as wilful and wanton, and (2) a jury question exists as to whether Executive terminated the services it provided to Flanigan in bad faith. *Held*:

1. The state court did not err in granting summary judgment to Executive.

> Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of breach by the other party. (Citations and punctuation omitted.) *Piedmont Arbors Condo. &c. v. BPI Constr. Co.*, 197 Ga. App. 141, 142 (397 SE2d 611) (1990).

*Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644 (1) (490 SE2d 124) (1997). In this regard, such exculpatory language does not relieve one from liability for wilful or wanton misconduct. *Brady v. Glosson*, 87 Ga. App. 476, 478-479 (74 SE2d 253) (1953); *Hawes v. Central of Ga. R. Co.*, 117 Ga. App. 771, 772 (162 SE2d 14) (1968). However, by its negligence count, Flanigan has averred only simple negligence in terminating business identity services it had contracted for. While Flanigan's complaint alleges that

---

[3] "Special damages are 'those which actually flow from a tortious act.' OCGA § 51-12-2." *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 645 (1) (490 SE2d 124) (1997).

[4] Otherwise, Flanigan sought $6,000,000 in lost profits, $6,000,000 in consequential damages, and $30,000 in special damages on its claim for breach of contract; $6,000,000 in actual damages on its claim for tortious interference with contractual relations; and $8,000,000 on its claim for punitive damages.

Executive's actions were "wanton, willful [sic], and intentional," it does so only in support of its claim for punitive damages. Moreover, Flanigan does not challenge the grant of summary judgment for Executive as to punitive damages. See *MacDonald v. MacDonald*, 156 Ga. App. 565 (275 SE2d 142) (1980) (appellate review limited to grounds presented to and ruled upon by trial court). No issue remaining on the question of Executive's actions as wilful or wanton negligence and the validity of the exculpatory clause to waive simple negligence undisputed under the service agreement, the state court properly granted summary judgment to Executive on Flanigan's negligence claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629 (462 SE2d 789) (1995) ("[a] demonstration of mere negligence is not sufficient to show wilful or wanton [conduct].").

Even were this not the case, the liquidated damages provision of the services contract in and of itself is sufficient to authorize summary judgment for Executive in this case. *Lau's Corp. v. Haskins*, supra. It is undisputed that the service agreement bound Flanigan to liquidated damages only in lieu of damages which might otherwise have been recoverable in contract. *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 712 (2) (507 SE2d 493) (1998).

> [Flanigan] is not permitted a double recovery of the same damages for the same wrong. He is entitled to only one satisfaction of the same damages, in either contract or tort. *Saunders, Stuckey & Mullis, Inc. v. Citizens Bank &c. Co.*, 265 Ga. 453, 456 (458 SE2d 337) (1995); *City of Atlanta v. J. A. Jones Constr. Co.*, 260 Ga. 658, 659 (2) (398 SE2d 369) (1991); *Georgia Society of Plastic Surgeons v. Anderson*, 257 Ga. 710, 714-715 (4) (363 SE2d 140) (1987); *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188-189 (5) (450 SE2d 452) (1994); *Mathis v. Melaver, Inc.*, 206 Ga. App. 392, 393 (425 SE2d 401) (1992).

Id. at 712. Finally, while there can be separate damages in contract and tort where separate transactions support recovery under each theory, such is not the case here. *Henderson v. Glen Oak, Inc.*, 256 Ga. 619 (351 SE2d 640) (1987); *Woodhull Corp. v. Saibaba Corp.*, supra at 713; see also *Long v. Marion*, 182 Ga. App. 361, 366 (5) (355 SE2d 711) (1987).

2. In light of our disposition in Division 1, we need not address Flanigan's remaining claim of error.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED MARCH 5, 2001 —
RECONSIDERATION DENIED APRIL 3, 2001 

*Lorenzo C. Merritt, Robert Kenner, Jr.,* for appellant.
*Troutman Sanders, Michael E. Johnson, Stephen W. Riddell,* for appellees.