[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 1, 2005**
**THOMAS K. KAHN**
**CLERK**

_____

No. 04-11082

_____

D. C. Docket No. 03-00074-CV-2

DANIEL D. FLOOD,
Individually and as the adminstrator of the estate
of THOMAS J. FLOOD, deceased,

Plaintiff-Appellant,

versus

YOUNG WOMAN'S CHRISTIAN ASSOCIATION OF BRUNSWICK,
GEORGIA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(February 1, 2005)**

Before BIRCH, BARKETT and COX, Circuit Judges.

BIRCH, Circuit Judge:

In this case we determine whether summary judgment should have been granted to the defendant, the Young Woman's Christian Association of Brunswick, Georgia ("YWCA"), when the decedent, Thomas J. Flood ("T.J."), drowned in the YWCA pool after signing a liability waiver. On behalf of the estate, Daniel D. Flood ("Daniel"), Thomas's father, appeals the decision of the district court that granted summary judgment to the YWCA. We AFFIRM.

## I. BACKGROUND

On 25 May 2001, while staying in Brunswick, Georgia, T.J. went to the YWCA to use the swimming pool. T.J. was an experienced swimmer and a civilian employee of the United States Navy. He was using the pool to train for his upcoming course at the Navy's Surface Rescue Swimmer School ("SRS") in Jacksonville, Florida. At 2:30 P.M., T.J. arrived at the YWCA, but before he could enter the pool he was required to pay ten dollars and sign a document labeled "Informed Consent for Fitness/Aquatics Participation" ("Informed Consent Document").[1] He then introduced himself to one of the lifeguards and began

---

[1]The document T.J. signed provided:

> I desire to engage voluntarily in the YWCA fitness/aquatics programs in order to attempt to improve my physical fitness. I understand that the activities are designed to place a gradually increasing workload on the body and to thereby attempt to develop and maintain cardiorespiratory fitness, body composition, flexibility, and muscular strength and endurance.

swimming laps sometime between 2:45 and 3:00 P.M.

At this time, two lifeguards, Ryan Grolemund[2] and Patrick Hoffman, were on duty, and the number of swimmers was low. Both lifeguards noted that T.J. was an excellent swimmer and was swimming some of his laps underwater, coming up for air only two or three times each pool length. At approximately 3:30, Grolemund signaled to Hoffman that he was going to stop lifeguarding surveillance and check the pool chemicals. Shortly thereafter, T.J. was discovered

---

I understand the need for physical examination prior to beginning an exercise program. Realizing that the results of such a physical examination might indicate that I not begin an exercise program, I elect _____ to have ___X___ NOT to have such an examination performed. I assume the risk for any injury I might suffer in an exercise program conducted at the YWCA.

I understand that I am responsible for monitoring my own condition throughout the exercise program and should any unusual symptoms occur, I will cease my participation and inform the instructor of the symptoms.

In signing this consent form, I affirm that I have read this form in its entirety and that I understand the nature of fitness/aquatics programs. I also affirm that my questions regarding the fitness/aquatics programs have been answered to my satisfaction.

Also, in consideration for being allowed to participate in the YWCA fitness/aquatics programs, I agree to assume the risk of such exercise, and further agree to hold harmless the YWCA and its staff members conducting the fitness/aquatics programs from any and all claims, suits, losses, or related causes of action for damages, including, but not limited to, such claims that may result from my injury or death, accidental or otherwise, during, or arising in any way from, the exercise program. Therefore, I understand, that if I am injured during these YWCA programs, that I am responsible for paying my medical costs.

R1-25 Exh. A.

[2]Grolemund assumed Jay Totten's lifeguarding duties at 3:00.

3

unconscious; however, both parties dispute how long T.J. remained unconscious underwater.

Daniel presents evidence that while Grolemund was checking pool chemicals, Hoffman was also away from his lifeguard stand talking to Grolemund and not watching the pool. During this time, Daniel argues that T.J. fell unconscious and was underwater for three to five minutes before rescue efforts began. On the other hand, the YWCA presents evidence that Hoffman was scanning the pool and had observed T.J. swimming only 30 seconds before Hoffman was alerted to the drowning and began rescue efforts.[3] Regardless, the facts indicate T.J. was discovered by a pool patron, Darlene Moye, who signaled to the lifeguards for help. Hoffman immediately swam to T.J., brought him to the surface, and started resuscitation efforts that were unsuccessful. T.J. was later pronounced dead at Southeast Georgia Regional Hospital.

The YWCA's expert testified that T.J.'s death was caused by fresh water drowning due to shallow water blackout. The YWCA expert also testified that the strenuous exercise T.J. was doing in preparation for the SRS course caused him to hyperventilate and pass out underwater. Daniel's expert estimated that three to five minutes elapsed between when T.J. took his last breath of air and when he was

_____

[3]Viewed in the light most favorable to the party opposing summary judgment, we must assume T.J. was under water for three to five minutes before rescue efforts began.

4

discovered.

Daniel filed suit in district court claiming that the YWCA was negligent. The district court granted summary judgment to the YWCA because the Informed Consent Document was a valid waiver of the YWCA's liability, and the actions of the YWCA were not grossly negligent. We now review this decision.

## II. DISCUSSION

We review <u>de novo</u> the district court's grant of summary judgment to the YWCA and view the evidence and all reasonable inferences therefrom in the light most favorable to Daniel. <u>See</u> <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). The YWCA is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Daniel presents three issues on appeal. First, Daniel argues that the Informed Consent Document T.J. signed was an inadequate liability waiver, and therefore, the YWCA's actions should be examined under an ordinary negligence standard. Second, Daniel contends that even if the Informed Consent Document is a sufficient waiver, there is enough evidence for a jury to determine that the

YWCA's actions were grossly negligent.  Third, Daniel argues that the district court erred by granting summary judgment on the gross negligence issue <u>sua sponte</u>, without allowing Daniel sufficient opportunity to counter.

A. <u>The Informed Consent Document</u>

Before T.J. could use the YWCA pool, he was required to sign the Informed Consent Document.  That document contained an exculpatory clause in which T.J. agreed to assume the risk of injury during YWCA exercise programs and to hold the YWCA harmless from any suits for injury or death.  Daniel argues that this document did not have a proper disclaimer of liability or assumption of the risk clause and only applied to fitness programs conducted by the YWCA.

In Georgia, a party may exempt itself from its own simple negligence through exculpatory clauses as long as the clause is not "void as against public policy." <u>Hall v. Gardens Servs., Inc.</u>, 332 S.E.2d 3, 5 (Ga. App. 1985); <u>accord</u> <u>Lovelace v. Figure Salon, Inc.</u>, 345 S.E.2d 139, 140-41 (Ga. App. 1986). Exculpatory clauses in fitness club contracts are generally not void as against public policy, <u>see</u> <u>Hembree v. Johnson</u>, 482 S.E.2d 407, 409 (Ga. App. 1997); however, they "must be clear and unambiguous." <u>Dep't of Transp. v. Arapaho Constr., Inc.</u>, 357 S.E.2d 593, 594 (Ga. 1987) (punctuation omitted).  Any ambiguity will be interpreted against the drafter.  <u>See id</u>.

6

The Georgia Court of Appeals has upheld exculpatory clauses that disclaim a party's negligence when they contain (1) a covenant not to sue, (2) a disclaimer of liability, and (3) an assumption of risk clause.[4] See My Fair Lady of Georgia, Inc. v. Harris, 364 S.E.2d 580, 581 (Ga. App. 1987); Lovelace, 345 S.E.2d at 141. Daniel contends that although the Informed Consent Document at issue here has a valid covenant not to sue, it lacks a sufficient liability disclaimer and assumption of the risk clause and thus fails to apply to the facts of this case.

Specifically, Daniel cites to Batson-Cook Co. v. Georgia Marble Setting Co., 144 S.E.2d 547, 550 (Ga. App. 1965) for the proposition that "negligence" must be expressly mentioned in order to have a valid liability disclaimer, and without it the Informed Consent Document only releases the YWCA from claims asserted by third parties. We, however, do not agree with Daniel's reasoning. Although Batson-Cook scrutinizes exculpatory clauses in indemnity agreements for the intent to hold the indemnitor liable for the negligent acts of the indemnitee, see id., subsequent decisions of the Georgia Court of Appeals clarify that "an exculpatory clause does not need to expressly use the word 'negligence' in order to bar a negligence claim." Neighborhood Assistance Corp. of Am. v. Dixon, 593 S.E.2d

---

[4]We have found no Georgia law to suggest that each of these three clauses must be present for an exculpatory clause to be valid. However, since all three are present here, we find that the Informed Consent Document has a valid exculpatory clause under Georgia law.

717, 718 (Ga. App. 2004). In fact, the Georgia Court of Appeals has stated that a party's release from "any and all liabilities, claims, or lawsuits" will bar the opponent's negligence claims. McClesky v. Vericon Res., Inc., 589 S.E.2d 854, 855, 856 (Ga. App. 2003); see also Flanigan v. Executive Office Ctrs., Inc., 546 S.E.2d 559, 560, 561 (Ga. App. 2001) (validating the liability disclaimer that states, "[t]he client expressly agrees to waive, and agrees not to make any claim for damages"). Here, T.J. "agree[d] to hold harmless the YWCA and its staff members . . . from any and all claims, suits, losses, or related causes of action for damages, including, but not limited to, such claims that may result from [his] injury or death, accidental or otherwise, during, or arising in any way from, the exercise program." R1-25 Exh. A. This phrase is virtually identical to the exculpatory language approved of in McClesky and Flanigan; thus, we see no reason why this clause would not be a valid liability disclaimer under Georgia law.

Furthermore, Daniel argues that the assumption of risk clause is inadequate because T.J. only "assume[d] the risk of [his] exercise" and not the risk of using the "facilities," as in the Harris and Lovelace cases. See Harris, 364 S.E.2d at 580; Lovelace, 345 S.E.2d at 140. Moreover, Daniel argues that the Informed Consent Document should specifically list every risk T.J. faced while at the YWCA, including: the risk lifeguards will leave their posts to conduct maintenance duties,

8

the risk lifeguards will disregard their surveillance duties, and the risk that management will fail to supervise the lifeguards. Again, we do not agree with Daniel's contentions. Considering the entire Informed Consent Document as we must, see Arapaho, 357 S.E.2d at 595, T.J. agreed to "assume the risk for any injury [he] might suffer in an exercise program conducted at the YWCA." R1-25 Exh. A (emphasis added). Additionally, T.J. agreed to hold the YWCA and its staff members, including lifeguards, harmless from any lawsuits for his death, be it accidental or otherwise. We see no reason why such language should not be considered a sufficient assumption of risk by T.J. Although previous cases use slightly different language, there is no indication Georgia law requires specific language as to each risk assumed during an exercise routine at a fitness club.

Finally, Daniel argues that the Informed Consent Document only concerns exercise programs conducted by the YWCA and not exercise conducted by the individual separately. While the Informed Consent Document does cover exercise programs conducted by the YWCA, its language broadly covers all "exercise programs conducted at the YWCA" whether they are self-guided programs or formal programs the YWCA provides. R1-25 Exh. A. When T.J. signed the Informed Consent Document, it was apparent that he intended to perform a self-guided exercise program to prepare himself for SRS training. Again reading the

contract as a whole, T.J. was well aware that his exercise program at the YWCA could cause injury or death, and he knew that by signing the Informed Consent Document he could not hold the YWCA liable.

Thus, the Informed Consent Document was a valid exculpatory agreement that waived the YWCA's liability for acts of simple negligence but not gross negligence. We must now determine whether the grant of summary judgment was proper on the issue of gross negligence.

B. <u>Gross Negligence</u>

Georgia law allows a party to exempt itself from simple negligence by contract, but not gross negligence. <u>See</u> <u>Colonial Props. Realty Ltd. v. Lowder Constr. Co.</u>, 567 S.E.2d 389, 394 (Ga. App. 2002). Gross negligence is the absence of "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." O.C.G.A. § 51-1-4; <u>accord</u> <u>Colonial Props. Realty</u>, 567 S.E.2d at 394. Daniel presents evidence that the Red Cross lifeguarding standards require lifeguards to observe each swimmer every ten seconds. He contends that the YWCA lifeguards were grossly negligent because they violated the Red Cross standards by leaving their observation posts and failing to surveil the pool patrons for at least three minutes.

10

However, failure to apply certain safety standards does not necessarily rise to the level of gross negligence.  See Barbazza v. Int'l Motor Sports Ass'n, Inc., 538 S.E.2d 859, 861-62 (Ga. App. 2000).  In Barbazza, Fabrizio Barbazza was injured in a sports car race organized by the International Motor Sports Association ("IMSA").  See id. at 860-61.  Barbazza sued the IMSA arguing that it was grossly negligent for not following international standards on tire wall construction and qualifying requirements, which contributed to his injuries.[5]  See id. at 861.  Though Barbazza presented evidence that the IMSA did not follow safety guidelines from a top motor sports authority, the court affirmed the grant of summary judgment to the IMSA because there was no evidence the IMSA was required to apply those standards.  See id. at 861-62.

Similarly here, there is no evidence the YWCA was required to apply the Red Cross lifeguarding standards.  Though the lifeguards may have been inattentive, their actions did not rise to the level of gross negligence.  The lifeguards were guarding a pool with only a few swimmers, and they noticed that T.J. was spending long periods of time underwater as part of his training.  Accordingly, they would not be aware of any problem until T.J. failed to surface after a long period of time.  Further, upon realizing that T.J. was in distress, the

_____

[5]The court found Barbazza had signed a valid release for negligence and therefore needed to prove gross negligence in order to recover. Id. at 861.

11

lifeguards took immediate action and began rescue efforts.  There is no evidence that their rescue efforts were grossly negligent.  Thus, the district court's grant of summary judgment on the gross negligence issue is affirmed.

C. *Sua Sponte* Grant of Summary Judgment

Daniel next argues that the grant of summary judgment on the gross negligence issue was in error because the district court raised the issue sua sponte.  However, a district court may enter summary judgment sua sponte if the parties are given adequate notice that they must present all of their evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554 (1986).  As both Daniel and the YWCA acknowledged in their summary judgment briefs to the district court, R1-26 at 9; R2-44 at 13; a valid exculpatory clause does not waive liability for gross negligence under Georgia law.  See Colonial Props. Realty, 567 S.E.2d at 394. Here, the YWCA made a motion for summary judgment to dismiss based in part on the Informed Consent Document's exculpatory clause.  Daniel was therefore on notice that by arguing the invalidity of the exculpatory clause he would also have to address the gross negligence issue, which he in fact did address in his reply brief to the district court. R2-44 at 13-15.  Moreover, as the district court noted in its order denying reconsideration, the court considered all the evidence presented, and Daniel did not present any new evidence that the district court did not consider.

12

R5-59 at 3. Thus, we find no error in the district court's grant of summary judgment.

## III. CONCLUSION

Daniel appeals the district court's grant of summary judgment to the YWCA arguing that the court erred by finding that the exculpatory clause of the Informed Consent Document was valid, that there was no genuine issue of material fact as to gross negligence, and that the sua sponte grant of summary judgment on the gross negligence issue was proper. Upon review of the district court's decision, we conclude that the exculpatory clause was valid, there was insufficient evidence of gross negligence to withstand a summary judgment motion, and the court's grant of summary judgment sua sponte was proper. Accordingly, the summary judgment granted by the district court is AFFIRMED.