**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1541. MCCOMMONS, et al. v. WHITE, et al.

DOYLE, Presiding Judge.

Debra Ann White, as surviving spouse of Dr. Adam White and personal representative of his estate, filed a wrongful death action against Robert M. McCommons; Durhamtown Off Road Park, Inc. ("Durhamtown Park"); Durhamtown Farms, Inc.; Durhamtown Pro Shop, Inc.; Georgia Trails and Rentals, Inc.; Robert M. McCommons, as trustee of Two Rivers Irrevocable Trust (collectively referred to as "Durhamtown"); Melvin Durham; Carol Durham; R. Carson Durham; and Litha Hamilton.[1] Dr. White died while riding his dirt bike on a trail at Durhamtown Park, and a jury awarded his spouse damages in the amount of $22

---

[1] The latter four defendants are not parties to this appeal.

million. Durhamtown filed a motion for new trial and for judgment notwithstanding the verdict, which the trial court denied. Durhamtown now appeals, arguing that the trial court erred by denying its motions for directed verdict and for a new trial. Finding no error, we affirm the trial court's judgment.

"On appeal from the denial of a motion for a directed verdict, we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict."[2] Questions of law are reviewed de novo.[3] Similarly, we "will affirm the denial of a motion for new trial if at trial the evidence conflicted and some evidence supported the verdict[, and] [i]n considering this issue, we [also] view the evidence most favorably to the party who secured the verdict."[4] With these standards in mind, we turn to the evidence in this case.

---

[2] (Citation and punctuation omitted.) *City of Alpharetta v. Hamby*, 352 Ga. App. 511, 512 (835 SE2d 366) (2019).

[3] See id.

[4] (Citation and punctuation omitted). *Carson v. Carson*, 277 Ga. 335, 336 (1) (588 SE2d 735) (2003).

On Saturday, September 28, 2019, Dr. White visited Durhamtown Park, as he had many times before, to ride his dirt bike on what was known as the "Bomber Track." Defendant McCommons, who owned the various Durhamtown entities, testified that the weather that day was nice, hot, and dry, and Saturdays were busy when there was favorable weather. Before riding on the trails, Dr. White executed a waiver, which stated, in pertinent part:

> In consideration of being permitted to use the property, equipment, or facilities owned . . . by GEORGIA TRAILS AND RENTALS, INC., DURHAMTOWN OFF ROAD PARK, INC. . . . . (hereinafter individually and collective referred to as "DURHAMTOWN"), for the purpose of the following activities: hunting, fishing, camping, trail riding, racing or any similar activity . . . his/her personal representatives, assigns, heirs, and next of kin, hereby releases, waives, discharges and covenants to hold harmless DURHAMTOWN from all liability to PARTICIPANT, for all loss and/or damage on account of injury to the person or property of, or resulting in the death of PARTICIPANT, unless caused by the willful and wanton negligent act of DURHAMTOWN while PARTICIPANT is competing, working, or for any other purpose participating in any of the above referenced activities in any form or fashion. . . . PARTICIPANT acknowledges that such previously described activities are inherently dangerous, and that participation in such activities involve an assumption of risk that could result in damage to property, injury or death to PARTICIPANT.

On that same day, defendant McCommons drove an excavator owned by Durhamtown Farms across the Bomber Track and into the woods. McCommons testified that he was aware that the Bomber Track was open and active, but he was moving the excavator so that work could be done the following day. He also acknowledged that Durhamtown had a policy dictating that machinery should be kept 30 to 50 feet off the track at all times. Within a minute or so after crossing the Bomber Track, McCommons saw a motorcycle laid down on the track. Upon getting closer, he saw a tree across the track, the downed bike, and the decedent's body. He then radioed for assistance and asked the lodge to call 911. McCommons testified that he assumed at that point that the decedent had hit a fallen tree.

Sergeant William Smith was the first officer to respond to the scene. Upon examining the bike, Smith saw wood lodged in the handlebars of the bike, and because there was no other damage to the bike, he concluded that the tree hit the handlebars while in a downward motion. Smith testified that he asked McCommons what happened, and

> [he] stated that he was operating the excavator in the woods. . . . [H]e
> was driving the excavator down the ditch, he hear[d] something that

4

sounded like a tree falling. [He] stated that he thought he had hit a tree and did not think anything about it. . . . [H]e drove the excavator down the ditch and observed a tree leaning across the track[,] . . . looked up and observed a dirt bike laying on the ground . . . and [Dr. White] lying on the ground.

On Smith's body camera footage, a Durhamtown employee is heard saying that they had been clearing trees in the area. The coroner's narrative showed that McCommons told him he had been taking down some trees in the area. Smith testified that based on his investigation, he believed McCommons hit the tree and knocked it down.

Lieutenant Thomas Moore, who was Smith's direct supervisor at the scene, testified that it was obvious that the motorcycle had been struck by a tree from the pieces of wood in the handlebar. He also testified that the shovel on the backhoe was right next to the stump of the fallen tree, and photographs evidencing the same were introduced into evidence. Moore testified that he believed McCommons had knocked down the tree.

Durhamtown's theory was that Dr. White had hit a fallen tree, but Durhamtown offered no evidence whatsoever at trial. The plaintiff offered the

testimony of Kelly Kennett, a consultant in accident reconstruction and biomechanics, who was qualified as an expert witness. Kennett testified that he inspected the bike, the decedent's protective gear, and the site, and reviewed police and coroner records, photographs, and depositions as part of his investigation. Kennett opined that a falling tree hit the decedent's head, pushing him back off of the bike and causing his death. The injuries to the decedent's face and neck were consistent with the tree striking the front top area of his head. Kennett also opined that it was not possible for Dr. White to have run into a fallen tree lying on the ground because he would have gone over the handlebars, the bike would have tumbled, and the scene would have been completely different.[5] Kennett testified that the decedent's head fractures could not have been caused by falling to the ground. The GBI pathologist who performed Dr. White's autopsy testified that the decedent sustained fractures to his face, head, and the base of his skull, consistent with a severe impact; that motorcyclists who strike fixed objects in their path typically sustain pelvic injuries and the decedent had none; and that the decedent died instantly. The pathologist opined that the tree fell onto the decedent and therefore listed the cause of death as "motorcyclist struck by tree."

---

[5] The decedent's riding coach testified that there was a relatively small amount of damage to the bike, such that he was able to ride it the day after the accident.

Durhamtown offered no evidence at trial, and the jury returned a verdict against them. Durhamtown filed a motion for new trial and/or motion for JNOV , which the trial court summarily denied.[6] This appeal followed.

1. Durhamtown argues that the trial court erred by denying their motion for directed verdict on several grounds, which we address below. "A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[7] And as stated earlier, we affirm the denial of a motion for directed verdict if there is any evidence to support it.[8] In light of the evidence regarding the cause of Dr. White's death, the trial court did not err in denying Durhamtown's motion for a directed verdict.

(a) In two enumerations of error, Durhamtown argues that the waiver signed by Dr. White barred the claims brought in this action, and in a related enumeration,

---

[6] The trial court amended its final judgment to include attorney fees and expenses awarded pursuant to OCGA § 9-11-68.

[7] (Punctuation omitted.) *Ammons v. Clouds*, 295 Ga. 225, 230 (2) (758 SE2d 282) (2014).

[8] See *Hamby*, 352 Ga. App. at 512.

maintains there was no evidence of gross negligence, which rendered the waiver applicable. We address these enumerations together.

Durhamtown maintains that the waiver was not required to include every risk that a motocross dirt bike rider may experience, and in this instance, the release was broad enough to cover injuries or death related to falling trees. In support of this position, Durhamtown cites *Flood v. Young Women's Christian Assn. of Brunswick, Ga. Inc.*,[9] which is not binding precedent as to this Court's interpretation of Georgia law and is distinguishable from the instant case. In that case, the decedent, an experienced swimmer who was training to become a rescue swimmer and had signed an informed consent document before using the facility's pool, fell unconscious while swimming and drowned.[10] The court explained that "[i]n Georgia, a party may exempt itself from its own simple negligence through exculpatory clauses as long as the clause is not void as against public policy."[11] The court found that the informed consent in which the plaintiff agreed to assume the risk for any injury he might receive in an exercise

---

[9] 398 F3d 1261 (11th Cir. 2005).

[10] See id. at 1263.

[11] Id. at 1264-1265 (A), citing *Hall v. Gardens Svcs., Inc.*, 174 Ga. App. 856, 857-858 (332 SE2d 3 (1985).

program conducted at the facility was valid and waived the facility's liability for acts of simple negligence.[12] The court reasoned that the accidental drowning was an inherent risk of exercising in the program that was expressly included in the informed consent,[13] and the court found no evidence of gross negligence.[14] In the case sub judice, however, the plaintiff alleges that Durhamtown was grossly negligent.

Instructive here, the *Flood* Court explained that a party cannot exempt itself from gross negligence in a waiver.[15]

> [G]ross negligence is the absence of even slight diligence, and slight diligence is defined in OCGA § 51-1-4 as "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise. While questions of gross negligence and slight

---

[12] See *Flood*, 398 F3d at 1266 (II) (A).

[13] See id.

[14] See id. at 1267 (II) (B).

[15] See id. at 1266 (B).

diligence are usually to be determined by a factfinder, courts may resolve them as matters of law in plain and indisputable cases.[16]

On its face, the waiver in the instant case expressly did not apply to injuries "caused by the willful and wanton negligent act of DURHAMTOWN" while the participant was engaging in activities sanctioned on the property, such as trail riding. McCommons knew that the track was open and busy on the day of the accident, yet he drove the excavator across the track anyway and was operating nearby despite Durhamtown's policy of not operating equipment within 30 to 50 feet of an open track. Photos showed the bucket of the excavator near the stump of the tree that fell and killed the decedent. McCommons told Officer Smith that he thought he had hit a tree and did not think anything about it. He also told the coroner that he had been taking down some trees in the area.

Durhamtown's argument is based solely on the theory that a dead tree fell and caused Dr. White's death. Durhamtown offered no evidence to support its theory. Moreover, its argument is belied by the evidence that McCommons hit the tree, causing it to fall directly onto the decedent's head. The medical evidence and other

---

[16] (Citation and punctuation omitted). *Johnson v. Omondi*, 294 Ga. 74, 77-78 (751 SE2d 288) (2013).

10

expert testimony is consistent with this cause of death. Accordingly, there is some evidence to support the verdict, and the trial court properly denied the defendants' motion for directed verdict on the issue of whether the waiver absolved Durhamtown of liability.

(b) In two related enumerations of error, Durhamtown contends that the plaintiff did not establish that the defendants operated a joint venture in the activity in which the decedent was killed. Durhamtown includes no argument in its brief but simply lists the elements of a joint venture and summarily maintains that the plaintiff did not prove them.[17]

---

[17] Under Georgia law,

[a] joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control. Without the element of mutual control, no joint venture can exist. In order for one party to be liable for the negligence of another under a joint venture theory, the party must have had the right to direct and control the conduct of the other party in the activity causing the injury. The mere existence of a business interdependency does not create a joint venture.

(Punctuation omitted.) *Gateway Atlanta Apts. Inc. v. Harris*, 290 Ga. App. 772, 778 (2) (b) (660 SE2d 750) (2008).

11

Generally, one of the purposes of incorporating a business is insulation from liability. And a cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees even in the situation in which a corporation is owned solely by one person. Courts, therefore, should be cautious about ignoring the corporate structure. The corporation shields its members from liability unless there is a reason to pierce the corporate veil. A plaintiff may rely on three intertwined theories in an attempt to pierce the veil: (1) alter ego; (2) agency; and (3) joint venture.[18]

As the plaintiff points out, her complaint not only alleged joint enterprise, but it also alleged alternate theories of liability to pierce the corporate veil of the Durhamtown entities, including alter ego and agency, and the jury was charged on each theory. Durhamtown's argument that no joint venture was established ignores the fact that the jury could have found it liable under the alternative theories.

The evidence here established that defendant Two Rivers Irrevocable Trust owns all of the land upon which Durhamtown operates, which the trust acquired in 2012. McCommons is the trustee of the trust and the beneficiaries are his sons. McCommons is also the sole shareholder, sole officer, and sole member of the board

---

[18] (Citations and punctuation omitted.) *Cobra 4 Enterprises v. Powell-Newman*, 336 Ga. App. 609, 612 (758 SE2d 556) (2016). .

of directors of Durhamtown Farms, Georgia Trails & Rentals, Durhamtown Pro Shop, and Durhamtown Off Road Park. Durhamtown Off Road Park is the company that rents out cabins and RV sites. All of the companies share an office (with the exception of the pro shop), there is one secretary for all of the businesses, and the companies also use the same phone and radio systems. McCommons testified that each business has a verbal lease with the trust to use the land and makes lease payments to the trust. Yet, the trust did not have a separate bank account until 2020.

During trial, the following colloquy occurred:

Q. So you're saying the lease was verbal?

A. We have an agreement.

Q. Between yourself and yourself?

A. Yeah, well, it was set up that way with my attorneys.

McCommons explained the business relationships among the entities as follows:

Durhamtown Farms owns all the equipment it leases . . . to the businesses that need rolling stock, machines or whatever, ATV rentals, bulldozers and so forth. So you've got the company that owns all of the equipment then leases it out to the track. Durhamtown Trailers and Rentals. Then Two Rivers owns the land and leases out to Trailers and

13

Rentals for the use of the tracks and so forth. Then also for the use of the buildings to operate the business out of.

When customers rent equipment, they rent it from Georgia Trails and Rentals, which then pays Durhamtown Farms, pursuant to a verbal agreement. When asked how he determined the price that one company would pay another for equipment, he replied that "we" would set a percentage, then explained that the "we" was him and that he "consider[ed] 'we' as a company."

On the day of the accident, McCommons acknowledged that the work he was doing benefitted all of the entities. He was operating an excavator owned by Durhamtown Farms on property owned by Two Rivers Irrevocable Trust to arrange for work to be done that benefitted Georgia Trails and Rentals. McCommons testified that the work did not directly benefit the pro shop, but it would benefit indirectly from the customers who rent the cabins and equipment, who would buy items from the pro shop.

With regard to the finances of the entities, McCommons testified that one company would pay the bill of another company if the latter company was short of funds and could not pay the bill, and that from 2015-2019, one of the companies paid

the mortgage on his home and his utility bills. From 2016-2019, McCommons paid no credit card bills from his personal account. Durhamtown Off Road Park paid his electric and Direct TV bills, his life insurance premium, and his medical bills. He also admitted that he reimbursed himself from the Pro Shop the amount he paid for personal income taxes in 2018. Durhamtown had no bank statements for Two Rivers Irrevocable Trust until June 2020, almost a year after Dr. White's death in September 2019, and the Trust did not file taxes in 2017, 2018, or 2019.

> Under Georgia law, piercing the corporate veil requires some evidence of abuse of the corporate form, and sole ownership by one person is not a factor. Rather, there must be evidence that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.[19]

"Such evidence may include the owner using corporate funds for personal expenses or the owner bleeding one company to pay the expenses of another company he owns or the owner treating all his companies and himself as one unit."[20]

---

[19] (Citations and punctuation omitted). Id. at 613 (2).

[20] *Rasheed v. Klopp Enters.*, 276 Ga. App. 91, 95 (2), n. 4 (622 SE2d 442) (2005).

The record is replete with evidence of commingling funds between the businesses and of McCommons using the company funds for personal expenses and treating the companies and himself as one unit, which allowed the plaintiff to pierce the corporate veil of any of the defendants to hold McCommons liable.[21] Additionally, the jury could have also concluded that McCommons was the agent of each corporate defendant, rendering each vicariously liable for his conduct. The jury was charged:

> The relationship of principal and agent arises whenever one person — the principal — expressly or implicitly authorizes another — the agent — to act for the principal. A business entity such as a corporation or trust, such as Durhamtown Off Road Park, Inc., Durhamtown Farms, Inc, Durhamtown Pro Shop, Inc., Georgia Trails and Rentals, Inc., or Two Rivers Irrevocable Trust is regarded as a person in this instance. The principal shall be bound by all acts of an agent that are performed within the scope of the agent's authority.

---

[21] See *Cobra 4 Enterprises*, 336 Ga. App. at 613 (2) (corporate veil could have been pierced where owner of each of two corporations used them to protect his assets, ignored corporate formalities, failed to hold shareholder meetings or elections of corporate officers). See also *Sheppard v. Tribble Heating &c.*, 163 Ga. App. 732-733 (1) (294 SE2d 572) (1982) (corporate veil pierced where, in addition to other evidence including undercapitalization and use of corporate funds to pay personal expenses, sole shareholder and director deposited corporate checks into his personal account). Compare *Fuda v. Kroen*, 204 Ga. App. 836, 838 (1) (420 SE2d 767) (1992) (corporate veil not pierced where party testified to scrupulously accurate maintenance of separate corporate records and accounts and included no showing that any personal and corporate accounts were commingled or confused).

The record reflected that McCommons was the principal and agent for each entity. He was responsible for the operation of each business, made verbal agreements with himself as to how the businesses interacted with each other and as to how they paid each other, commingled corporate funds with his own, and, on the day in question, acted in furtherance of the purpose of each business generally when he decided to move the excavator. In sum, because the jury could have concluded either that each individual defendant was vicariously liable for McCommon's actions as its agent or that the evidence authorized piercing the corporate veil of each defendant, Durhamtown's enumerations of error fail.

2. Next, Durhamtown argues that the trial court erred by denying their motion for new trial because it failed to give several of its proposed jury charges. Again, we find no error.

"A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue."[22]

---

[22] (Punctuation omitted). *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002).

It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charges contained error. If the charge as a whole substantially covered the issues to be decided by the jury, we will not disturb a verdict supported by the evidence simply because the charge could have been clearer or more precise. . . . In order for a refusal to charge to be error, the request must be entirely correct and accurate; *adjusted to the pleadings, law, and evidence*; and not otherwise covered in the general charge.[23]

(a) Durhamtown argues that the trial court erred by refusing to properly charge the jury as to "joint venture" between one or more of the defendants. Durhamtown, however, does not set forth the charge that should have been given nor does it assert how the charge given amounted to error. In fact, the charges on joint venture that were given at trial were proposed by Durhamtown,[24] and Durhamtown did not object

---

[23] (Citations and punctuation omitted; emphasis added). *Lee v. Swain*, 291 Ga. 799, 800 (2) (a) (b) (733 SE2d 726) (2012).

[24] The jury was charged as follows:

A joint venture exists if two or more entities combine property or labor, or both, in a joint undertaking to profit with mutual control so as to render all joint venturers liable as to the other's negligence.

An agreement or contract is essential to create a joint venture. Absent agreement, persons do not become joint venturers simply by pursuing

to the charges during the charge conference or at trial. Accordingly, this enumeration of error fails.[25]

_____

joint interests in a common excursion.

The actual intent to form a joint venture, or a manifested intent to be joint venturers, is essential.

A contribution by the co-venturers to the joint undertaking is an essential element to a joint venture.

For a joint venture to come into existence, there must be a joint proprietary interest and right to mutual control over the enterprise's subject matter.

The right to exercise mutual control is a crucial part in a joint venture. Without mutual control, a joint venture cannot exist.

A right to participate in any expected profits is an essential element to a joint venture.

[25] See *Powell v. Alan Young Homes, Inc.*, 251 Ga. App. 72, 75-76 (554 SE2d 186) (2001) ("[I]n all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection.").

(b) Durhamtown argues that the trial court erred by refusing to charge the jury to apportion negligence/fault to Dr. White. Again, Durhamtown presented no evidence at trial, but it argues that pursuant to OCGA § 51-12-31, apportionment was necessary because there was evidence that the decedent may have been driving 60 miles per hour and perhaps could have avoided the tree. This argument fails.

> Pursuant to OCGA § 51-12-33 (c), in assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit. A person is considered to have contributed to the alleged injury where that person is shown to have breached a legal duty in the nature of a tort that is owed for the protection of the plaintiff, the breach of which is the proximate cause of his injury. . . . While it is the defendant's burden to establish a rational basis for apportioning fault to a non-party, whether the non-party contributed to the alleged injury is a question of fact for a jury to decide.[26]

As the plaintiff points out, Durhamtown offered no evidence that Dr. White was driving 60 miles per hour, or that even if he had been, he was not exercising ordinary

---

[26] (Citation and punctuation omitted.) *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 58 (1) (b) (805 SE2d 60) (2017). See also *Martin v. Six Flags over Ga. II, LP*, 301 Ga. 323, 337 (III) (801 SE2d 24) (2017).

care in doing so, or he otherwise breached any legal duty, which proximately caused his injury. Conversely, there was expert testimony that based upon the scene, the decedent may have been traveling at a rate of 25 to 30 miles per hour , and the decedent's riding coach testified that he took his time learning how to ride the bike, was initially timid when learning and trained rigorously, and he was not a daredevil.

In *Johnson Street Properties, LLC*,[27] which involved an action by a plaintiff who was struck by a tree limb that feel from a gutter on an adjacent property, the court allowed apportionment as to the fault of the adjacent land owners who had notice of dead and decaying trees on their property.[28] Here, by contrast, the decedent had no notice that McCommons would be taking down trees near the Bomber Track. The apportionment statute requires, on its face, evidence that the party against whom apportionment is sought contributed to the injury or damages.[29] Durhamtown did not carry their burden of establishing a rational basis for apportionment, as they offered no evidence of the decedent's fault, and "liability cannot rest upon guesswork,

---

[27] *Johnson Street Props., LLC*, 302 Ga. at 51.

[28] Id. at 58-59 (1) (b).

[29] See OCGA § 51-12-33 (c).

conjecture or speculation beyond inferences reasonably to be drawn from the evidence."[30]

(c) Durhamtown argues that the trial court erred by refusing to charge the jury to apportion negligence/fault as to non-parties Melvin Durham, Carol Durham, R. Carson Durham, and Litha Hamilton, as well as Bevelyn's Kitchen, Inc., Durhamtown Plantation Sportsman's Resort, LLC, and Two Rivers Holding Co. We find no merit in this argument.

We have held that

> the fault of a nonparty cannot be considered for purposes of apportioning damages without some competent evidence that the nonparty in fact contributed to the alleged injury or damages. Indeed, were it otherwise, there would be no limitation on the number of potential nonparties that a trial court would be required to include on the verdict form for purposes of assessing fault under OCGA § 51-12-33(c).[31]

---

[30] *FDIC v. Loudermilk*, 930 F3d 1280, 1290 (II) (A) (11th Cir. 2019), citing *Gwinnett Property, N.V. v. G+H Montage GmbH*, 215 Ga. App. 889, 892 (1) (453 SE2d 52) (1994). In *Loudermilk*, the Eleventh Circuit, in addressing an apportionment argument, stated that "the touchstone inquiry of the apportionment statute is whether fault is divisible," and it held that apportionment was not supported by the evidence. *Loudermilk*, 930 F3d at 1290-1291 (II) (A).

[31] See *Southwestern Emergency Physicians, P.C. v. Quinney*, 347 Ga. App. 410, 428 (4) 819 SE2d 696) (2018) ("assumptions based on speculation are not evidence").

The Durhams and Hamilton parties were dismissed from the case after reaching a settlement with the plaintiff. Durhamtown sought to charge the jury to apportion fault as to these non-parties, but as stated in subdivision (b), there can be no apportionment in the absence of evidence of liability, which Durhamtown did not provide.[32] Durhamtown filed notices of fault as to non-parties as to the remaining parties listed above, but this filing, alone, does not constitute a persuasive argument that the charge was required, and Durhamtown offered no evidence to establish some breach of legal duty on the part of any non-party. Thus, it was not improper for the trial court to refuse to charge the jury on apportionment under these facts.

(d) Lastly, Durhamtown argues that the trial court erred when it refused to charge the jury on unfortunate event, the plaintiff's duty of care, plain view, avoidance of consequences, assumption of risk, comparative negligence of joint tortfeasors and non-parties, and apportionment of damages. Durhamtown submits that these charges should have been given in light of the evidence that the decedent signed the waiver, that the decedent may have been traveling 60 miles per hour immediately prior to the

---

[32] See *McReynolds v. Krebs*, 307 Ga. App. 330, 334 (1) (705 SE2d 214) (2010) (no apportionment with settling defendant where no evidence offered as to that defendant's alleged fault).

accident, and that assuming the decedent struck a falling tree, the tree may have been in motion approximately two to five seconds prior to his accident. However, again, in its brief, Durhamtown offers no explanation as to why these instructions were necessary or as to how they were harmed by the trial court's refusal to give the charges. Moreover, as stated earlier, in order to find error in a trial court's refusal to give a charge, "the request must be entirely correct and accurate; adjusted to the pleadings, law, and evidence; and not otherwise covered in the general charge."[33] Durhamtown's proposed charges do not meet this standard, and this enumeration fails.

(i) *Unfortunate event.* Durhamtown requested the following charge: "The mere fact that an invitee was injured, without more, does not give rise to owner's liability. An unfortunate event, by itself, is not sufficient to authorize negligence." In the instant case, there was sufficient evidence of Durhamtown's negligence and no evidence of negligence that could be attributed to the decedent, so this charge was not reasonably raised by the evidence.

(ii) *Plain view.* Durhamtown requested the following charge:

---

[33] (Punctuation omitted.) *Lee*, 291 Ga. at 800 (2) (b).

The "plain view doctrine" is applied where the invitee alleges not to have seen the hazard prior to the incident, and is applicable even though the invitee had no actual knowledge as to the hazard before being injured, based upon the theory that the invitee should have known about the hazard's presence. The "plain view doctrine" is equivalent to "constructive knowledge," and "voluntary negligence" is applicable when the invitee knew or should have known about the hazard, yet nevertheless proceeded. When an invitee suffers injuries due to an object within "plain view," such individual cannot recover even if the invitee did not actually see the object before the incident.

On its face, this charge is not adjusted to the evidence in this case. The charge states that it is applicable when the invitee knew or should have known about a static defect (as opposed to a falling tree), yet nevertheless proceeded. There was no evidence offered that the decedent knew that anyone would be cutting down trees near an active track or that he saw the tree before the accident. Accordingly, this charge, too, was properly refused.

(iii) *Avoidance of consequences*. Durhamtown requested the pattern charge, which provides:

If the plaintiff, by the exercise of ordinary care, could have avoided the consequences caused by the defendant's negligence, then the plaintiff is not entitled to recover. In other cases, the defendant is not relieved even

though the plaintiff may have contributed to the injury sustained. The plaintiff's duty to exercise ordinary care to avoid the consequences of the defendant's negligence does not arise until the defendant's negligence exists and the plaintiff knew or, in the exercise of ordinary care, should have known of such negligence.[34]

A jury charge on avoidance of consequences "required evidence of some degree of negligence by [the decedent].[35] There was no such evidence in this case.

(iv) *Assumption of the risk.* Durhamtown requested the pattern charge, which provides:

Assumption of the Risk. When a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care for one's own safety, that person cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of the other person.[36]

---

[34] Suggested Pattern Jury Instructions, Vol. 1: Civil Cases § 60.120.

[35] *Flournoy v. Gable*, 256 Ga. App. 722, 724 (2) (569 SE2d 861) (2002) (charges on duty to lessen damages, avoidance of consequences, equal negligence, and comparative negligence all require some negligence on the part of the plaintiff).

[36] Suggested Pattern Jury Instructions, Vol. 1: Civil Cases § 60.130.

Assumption of the risk bars a plaintiff's recovery when a defendant establishes "that a plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[37] In order to successfully assert this affirmative defense, the defendant "must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[38] Put simply, "assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone."[39] The waiver signed by the decedent did not contemplate the danger of trees being taken down near an active track, as such a risk is not inherent to motocross riding. Again, Durhamtown introduced no evidence that the decedent knowingly exposed himself to such a risk. Because this charge, too,

---

[37] (Citation and punctuation omitted.) *Muldovan v. McEachern*, 271 Ga. 805, 807-808 (523 SE2d 566) (1999).

[38] (Citations omitted.) Id.

[39] (Citation and emphasis omitted.) Id.

is not adjusted to the facts of this case, the trial court did not err in refusing to give the charge.

(v) *Plaintiff's duty of care; comparative negligence of joint tortfeasors and non-parties; apportionment of damages*. For reasons outlined in division (2) (c), the trial court's refusal to give the latter two proposed charges did not constitute error. Durhamtown's requested charge on the plaintiff's duty of care stated that "[a] landowner is not an insurer as to an invitee's safety. When determining whether an invitee failed to exercise ordinary care, the issue is whether the invitee exercised the prudence a careful person would use in a like situation." These concepts were adequately covered in the charges on the duty of ordinary care and premises liability.[40]

---

[40] The jury was charged:

The Plaintiff must prove that the Defendants were grossly negligent in one or more ways alleged in order to recover. . . . If you find no gross negligence at all on the part of the Defendants, then the Plaintiff's case against the Defendants end. . . . Every person has a duty to use ordinary care for his or her own safety. If you should determine from the evidence that the Plaintiff failed to use ordinary care and that this failure was the sole proximate cause of the Plaintiff's injuries, then the Plaintiff could not recover from these defendants.

We review jury instructions as a whole,[41] and the refusal to give an additional instruction already covered by the jury charge does not amount to error.[42]

*Judgment affirmed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[41] See *Lee*, 291 Ga. at 800 (2) (a).

[42] See *Burdette v. McDowell*, 321 Ga. App. 507, 509 (2) (739 SE2d 28) (2013).